William KNAPP, Plaintiff,

v.

Robert MILLER, et al., Defendants.

No. CV–N–92–170–ECR.

United States District Court,
D. Nevada.

Sept. 28, 1994.

Donald York Evans, Reno, NV, and Belli, Belli, Brown, Monzione, Fabbro & Zakaria, San Francisco, CA, for plaintiff.

Attorney Gen., Carson City, NV, for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Currently before the Court is Plaintiff's omnibus motion for clarification/reconsideration and relief from judgment pursuant to Fed.R.Civ.P. 60(b). (Doc. # 61) Defendants oppose said motion, (Doc. # 62) and Plaintiff responds (Doc. # 66). Said motion for clarification/reconsideration and relief from judgment pursuant to Rule 60(b) is now ripe for the Court's consideration.

### FACTS

Plaintiff is or was [1] employed as a Psychologist with the Nevada Department of Prisons (NDOP) as a classified employee. While so employed, Plaintiff planned and took steps toward opening a western mining camp theme-park brothel. Plaintiff's preparatory actions included advertising and soliciting start-up capital through advance sales of vouchers or tickets to the planned brothel, purchasing land and other actions.

Prostitution is legal on a county-by-county basis in Nevada and is and was legal in the county in which Plaintiff planned to open his

---

1. The Court is unsure whether Plaintiff is still employed with the Nevada Department of Prisons or not. Plaintiff was terminated, an administrative hearing officer reinstated Plaintiff, the state appealed and a district court reversed the administrative hearing officer's order and reinstated the original sanction of termination. The case is currently on appeal to the Nevada Supreme Court from the state district court's rulings. This Court has taken no action to reinstate Plaintiff.

brothel. Plaintiff's supervisors learned of his plans and activities. As a result, Plaintiff was fired, later reinstated, then demoted. Plaintiff's complaint is based on these events.

Plaintiff's amended complaint (Doc. # 27b) alleges thirteen causes of action. The fourth cause of action alleges a series of claims under 42 U.S.C. § 1983 arising from Plaintiff's original termination for violation of Plaintiff's First, Ninth and Fourteenth Amendment rights, all based on the original termination. The First Amendment rights allegedly violated, are the rights of free speech and association. The Court is at a loss to determine what Ninth Amendment rights were violated. The Fourteenth Amendment right violated is not specifically alleged. The Court presumes Plaintiff intends to allege a violation of procedural due process as guaranteed by the Fourteenth Amendment.

The fifth cause of action alleges more § 1983 claims arising from the entire course of events. Plaintiff alleges his termination, reinstatement and demotion constituted a course of harassing conduct pursued by Defendants in "retaliation for Plaintiff exercising his Constitutional rights of freedom of speech, access to the courts and due process of law, and in pursuing his available administrative remedies for his wrongful and tortious discharge." According to Plaintiff, this states a separate and distinct violation of § 1983.

The sixth cause of action alleges § 1983 claims arising from Plaintiff's demotion. Plaintiff alleges he was demoted without proper due process.

In addition to the § 1983 causes of action seeking damages, Plaintiff seeks injunctive relief. Plaintiff's tenth cause of action seeks an injunction ordering Defendants to reinstate Plaintiff to his original position, to award Plaintiff any lost back-pay, and to provide proper due process in any future demotions of Plaintiff. This cause of action is apparently based on Plaintiff's demotion without due process of law.

Plaintiff's eleventh cause of action, seeks to enjoin enforcement of an administrative regulation (AR 355). Plaintiff alleges it is unconstitutional on its face or as applied due to vagueness and free speech defects. Plaintiff's twelfth cause of action seeks a declaration to the same effect.

Plaintiff's remaining causes of action arise under state law.

By order entered June 14, 1994 (Doc. # 59), the Court granted Defendants summary judgment on Plaintiff's claims based on First Amendment violations and on Plaintiff's claims seeking to declare Administrative Regulation 355 unconstitutional or to enjoin its enforcement on that basis.[2] The Court then entered judgment in the action.

## DISCUSSION

### A. MOTION FOR CLARIFICATION

■ Plaintiff's motion for clarification is granted. Plaintiff is unsure of the status of this case and those claims not ruled on by the Court in its prior order. (Doc. # 59). This is due to the Court's order that judgment in the case be entered. The Court's order (Doc. # 59) not only failed to dispose of Plaintiff's remaining state law claims, but also failed to dispose of all of Plaintiff's federal claims. Because all claims were not disposed of, the action was not final and judgment should not have been entered. Therefore, the entry of judgment is void. On that basis, the Court's prior order (Doc. # 59) is amended so that the last sentence of said order, directing that "[t]he clerk shall enter Judgment accordingly[ ]" is deleted.

### B. MOTION FOR RECONSIDERATION AND MOTION FOR RULE 60(b) RELIEF FROM JUDGMENT

Both of Plaintiff's independent motions for reconsideration and for relief from judgment

---

2. Plaintiff's Eleventh and Twelfth causes of action are disposed of pursuant to the Court's order (Doc. # 59). The First Amendment claims alleged in Plaintiff's Fourth cause of action is dismissed, all that remains of Plaintiff's Fourth cause of action is a Ninth Amendment claim [?] and a Fourteenth Amendment claim for violation of procedural due process (deprivation of Plaintiff's property interest in his job without due process). Plaintiff's Fifth cause of action, to the extent it is based on a claim of "retaliation for Plaintiff exercising his Constitutional rights of freedom of speech," is also disposed of by the Court's order (Doc. # 59).

are based on the same facts and law and seek relief from the same order of the Court. For this reason, the Court treats said motions jointly to avoid ingemination.

## C. FIRST AMENDMENT CLAIM

Plaintiff cites a new Supreme Court case, *Cynthia Waters et al. v. Churchill,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), claiming that it establishes a new rule of law which is controlling and which merits this Court's revisitation of its prior rulings. Plaintiff argues that *Waters,* states new law of which this Court was unaware and therefore the Court should re-examine its rulings in light of the new law stated in *Waters.* The Court was aware of *Waters,* when it issued its order (Doc. # 59) as is demonstrated by the Court's citation to *Waters* at page three of its order where the Court states "[t]here is no issue as to what speech was the catalyst for plaintiff's employment termination, later changed to demotion, in this case. *Compare with Cynthia Waters*[,] ... (material question of fact remains as to whether Plaintiff was fired for statements at issue or because of something else)." The Court again cited *Waters* at pages five and six of its order (Doc. # 59).

Defendants properly take exception to Plaintiff's statement that *Waters* reinstates Plaintiff's First Amendment claims. (Doc. # 62). First, Defendants are correct in stating that *Waters,* does not "substantially affect" the burden of proof or create any new rule of law that applies to Plaintiff's First Amendment claims. *See Romero v. City of Pomona,* 883 F.2d 1418, 1423 (9th Cir.1989). Further, Defendants note that Plaintiff's original motion for reconsideration etc. (Doc. # 61) does not state with particularity

the grounds upon which it is made. The motion cites generally to *Waters,* without any specific reference to what part of *Waters,* is relied on nor any specific allegation of what deficiency this Court's order suffers. On this basis, the Court may deny Plaintiff's motion for reconsideration.

Nevertheless, because Plaintiff refines his argument in the reply, (Doc. # 66) the Court also addresses the merits of Plaintiff's motion as set out in the reply.[3]

Plaintiff cites *Waters,* for a new rule of law, and claims this new rule controls the First Amendment claims before this Court. *Waters,* does state a new rule of law, but not the rule for which Plaintiff cites it. The new rule *Waters,* states is that, a court must consider what a state employer reasonably believed was said, and is not to consider what the employee actually said when addressing a claim that a state employer impermissibly infringed on an employee's free speech rights.[4] *Waters,* —— U.S. at ——, 114 S.Ct. at 1889 (plurality opinion, O'Connor, J. joined by Rhenquist, C.J., Souter and Ginsburg JJ., which gave the judgment of the Court, with Scalia, Kennedy, and Thomas, JJ., concurring in the judgment and Stevens and Blackmun JJ., dissenting). There is no dispute regarding what Plaintiff actually said and what Defendants believed (reasonably or not) Plaintiff said. The new rule of law stated in *Waters,* does not apply to the case before the Court.

Plaintiff does cite *Waters,* properly for a different proposition, although not a proposition first stated in *Waters.* In *Waters,* the Supreme Court determined that the district court below had improperly granted the de-

3. The Court does not and will not make a practice of addressing the merits of issues first raised in a reply, as the opposing party is not afforded any opportunity to respond to new issues raised in a reply, which is ordinarily the last document submitted prior to the Court's ruling on a motion.

4. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) state the balancing test the Supreme Court has devised to determine whether a state employee's free speech interests are protected. When a state employee alleges ad-

verse state action in reaction to the employee's speech, in violation of the First Amendment the first issue to determine is whether the employee has a protected interest in the particular speech at issue. This issue is decided by first asking whether the employee's speech is on a matter of public concern and if it is then determining whether the employee's interest in expressing herself on the matter is outweighed by any injury the state, as an employer, might suffer as a result of the speech. *Connick,* 461 U.S. at 142, 103 S.Ct. at 1687; *Pickering,* 391 U.S. at 573, 88 S.Ct. at 1737.

fendant state employer summary judgment. 114 S.Ct. at 1891.

The Court held that a genuine and material factual dispute existed as to what the defendant employer's actual motivation was for firing the plaintiff employee. *Id.* The defendants argued plaintiff was fired for making comments disruptive of the workplace. *Id.* The Supreme Court ruled that was a legitimate ground for dismissal. *Id.* at ——, 114 S.Ct. at 1890. Plaintiff however, contended she was actually terminated for other, non-disruptive comments (not a valid basis for termination) which annoyed her supervisor. *Id.* at ——, 114 S.Ct. at 1891.

■■■ To state a first amendment violation a Plaintiff must establish: 1) that the conduct at issue was entitled to constitutional protection (this is established by reference to the *Connick/Pickering* test); and 2) that the constitutionally protected conduct was a substantial or motivating factor behind an adverse employment action. *Erickson v. Pierce County,* 960 F.2d 801, 804 (9th Cir. 1992) citing *Mt. Healthy City School District Board of Education,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). If the employee establishes the first two elements, the employer has the burden of proving it would have taken the same employment action even if the employee had not engaged in the protected conduct. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576.

Any dispute as to what actually precipitated the adverse employment action goes to the second element the plaintiff must prove—that the protected conduct at issue was a substantial or motivating factor behind the adverse employment action—not to whether Plaintiff had a protected interest in the speech. This second element was not first enunciated in *Waters*.

Plaintiff, in the motion for reconsideration etc. (Doc. # 61) is not alleging mistake, inadvertence or some other basis for Rule 60(b) relief. Plaintiff is arguing the correctness of the Court's ruling under established law, and arguing the Court incorrectly granted summary judgment because a genuine issue of material fact exists regarding this second element.

Plaintiff claims the Court focused only on the defendants version of events: that Plaintiff was fired for his commercial speech and activities and not for any comments made to newspaper reporters. Plaintiff argues that the Court held only that the termination did not violate Plaintiff's First Amendment rights to freely engage in commercial speech. Assuming the Court's ruling was proper on that basis, Plaintiff claims he was actually terminated for his noncommercial comments which appeared in a local newspaper, the *Nevada Appeal,* on April 16, 1991. Thus, Plaintiff argues this Court is faced with the same factual dispute present in *Waters:* assuming Plaintiff's termination was justified based on one category or instance of speech (Plaintiff's commercial solicitations), Plaintiff argues he was terminated for engaging in a different category of speech (the newspaper article of April 16, 1991) which would not justify his termination.

The Court proceeds to address this argument.

### 1. Argument First Raised Here

Plaintiff claims there is a material issue of fact as to precisely what speech was the catalyst for Plaintiff's termination. Plaintiff "additionally argues that it was speaking to the media about his corporation and ideas which was also a catalyst for his termination." Plaintiff's Response (Doc. # 66) p. 2, ln. 6–9. This is the first time Plaintiff has raised this argument. Previously, throughout the entire course of this litigation, both parties have argued only the issue whether Plaintiff's commercial solicitations and other commercial speech was the basis for Plaintiff's termination and whether that violated Plaintiff's rights or not. This is the first time Plaintiff has specifically argued that his noncommercial conversations with newspaper reporters were the true cause of his termination and not his solicitation and related materials.

■■ Under the theories being litigated at the time the summary judgment motion was decided, the Court's decision (Doc. # 59) was correct. Now however, after the fact, Plaintiff raises a new argument. A motion for relief pursuant to Fed.R.Civ.P. 60(b) should

not be granted on the basis of new facts, law or legal theories not advanced when a motion for summary judgment was originally briefed except for those reasons listed in Rule 60(b). Although Plaintiff moves for relief pursuant to Rule 60(b), Plaintiff does not allege or provide any evidence of any of the factors listed under Rule 60(b)(1–6). No basis for granting relief pursuant to Rule 60(b) is alleged or appears to exist. Nonetheless the Court addresses said motion on its merits.

### 2. Is Plaintiff's Speech Constitutionally Protected?

Plaintiff claims that the true catalyst for his termination was an article which appeared in the *Nevada Appeal* on April 16, 1991. Plaintiff spoke with a reporter from the *Nevada Appeal* and some of his comments appeared in the article of April 16, 1991. Thus, Plaintiff's claim alleges he was terminated for speaking to a reporter in violation of his First Amendment rights to do so.

■ The Court must first determine whether Plaintiff's speech and published comments to the *Nevada Appeal* are entitled to First Amendment protection. This determination is made under the test enunciated in *Pickering v. Board of Education*, 391 U.S. 563, 573, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968) and repeated in *Cynthia Waters et al. v. Churchill*, —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). This test protects the speech of government employees, but

> the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to "the interest of the State as an employer, in promoting the efficiency of the public services it performs through its employees."

*Waters*, —— U.S. at ——, 114 S.Ct. at 1884, citing *Connick* 461 U.S. at 142, 103 S.Ct. at 1687, quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35. If either of these conditions are not met, then the speech is not entitled to the protections of the First Amendment.

### a. Plaintiff's Comments Addressed a Matter of Marginal Public Concern

The Court's first task is determining what comments to the press Plaintiff claims were the basis for his termination. To create a genuine issue of fact regarding any such comments, Plaintiff must do more than make merely general allegations that his comments to the press were the actual motivation for his termination.

Plaintiff offers the following evidence and argument to establish a factual issue as to this claim.

Plaintiff provides evidence indicating that four of his supervisors or superiors knew of his scheme prior to his speaking with Sue Morrow of the *Nevada Appeal*. Plaintiff's argument is that he was not fired for his plans or activities in creating and opening his brothel, but for disclosing his plans to the public. In essence, Plaintiff argues that his supervisors did not care about his brothel related activities but objected to his disclosing this to the public along with his ideas relating to legalized prostitution in an article which identified Plaintiff as a psychologist with NDOP.

Under, Plaintiff's new theory, he was fired for disclosing his name and occupation. Because Plaintiff argues his supervisors didn't care about his actual plans, activities or ideas, the substance of the newspaper article revealing those plans, activities and ideas was not the cause of his termination, especially since Plaintiff alleges his supervisors already knew of these plans, activities and ideas. Plaintiff's new theory is that he was fired for disclosing his name and occupation, thereby associating NDOP with his plans, activities and ideas, in the eyes of the public. The only statements to the press which are truly at issue under this theory are those statements in which Plaintiff reveals his name and occupation.

Plaintiff proceeds to argue that because no charges were prepared or served and he was not fired

> *until* the *Nevada Appeal* article appeared[,] "a genuine issue of fact exists

regarding whether" it was his exercising his freedom of expression in speaking to the press on a matter of public concern, which was the catalyst for his termination, and not merely the alleged purely commercial speech (advertisements etc.) as claimed by Defendants.

Plaintiff further submits the opposition to motion for summary judgment filed by his wife in a related action—*Margaret Knapp v. Miller et al.*, CV–N–92–94–DWH. Plaintiff's purpose in submitting this document is that it "specifically identifies with particularity the evidence which establishes that Plaintiff's employers knew well in advance of April 16, 1991 about his 'hair brained scheme' and that they chose to do nothing about it until after the exercise of free speech which resulted in the *Nevada Appeal.*"

Plaintiff's claim that he was terminated in violation of his First Amendment rights is based on comments, allegedly his, which appeared in the *Nevada Appeal*, article of April 16, 1991. As discussed *supra*, the only relevant comments from that article are those in which Plaintiff reveals his identity and occupation.

Plaintiff does not inform us what statements he actually made to the *Nevada Appeal*. The article directly quotes Plaintiff for some statements but it is not apparent from a plain reading whether the bulk of the article—including the statements revealing Plaintiff's occupation—came from independent research or from statements made by Plaintiff. Viewing the evidence in the light most favorable to Plaintiff, the Court will assume Plaintiff's interview with the *Nevada Appeal* was the sole source for entire April 16, 1991 article.

The question before the Court is now narrowed to whether Plaintiff's disclosure of his identity and occupation in the *Nevada Appeal* article of April 16, 1991 was on a matter of public concern.

Plaintiff attempts to characterize his comments as an attempt to "provoke political debate through his interview with the *Nevada Appeal*, as an expression of his opinion. The form of Plaintiff's speech was not only commentary but also informative as to his ideas through his proposed venture." Having read said article, the Court cannot agree. There was no attempt to provoke political debate, the bulk of the article was merely informative of Plaintiff's proposed business venture, his financing schemes and boosterism for the novel theme-park concept.

In said article, Plaintiff is quoted only for the business aspects of the proposed brothel. Plaintiff is never quoted to comment on the morality, legality, political aspects or ever to comment, pro or con, on the issue of prostitution per se. Plaintiff is quoted at length about his solicitation efforts and his vision of an adult theme-park. In many respects, Plaintiff's comments are boosterism and despite their appearance in a mainstream newspaper are more closely akin to commercial speech than to comment on matters of public interest.

Taking the article as a whole, it is apparent that Plaintiff's comments were discussions of a proposed business. Most other business concerns would not be worthy of news coverage, the primary newsworthy aspect of Plaintiff's proposed business is that it happened to be a theme-park brothel. Plaintiff's comments, as purely business comments, are not matters of public concern. Nevertheless, because Plaintiff's comments relate to a planned brothel and thus to legalized prostitution, they are sufficiently related to matters of public concern that this Court must analyze whether they are themselves comments on matters of public concern.

In *Connick* the Court held

> that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. at 147, 103 S.Ct. at 1690.

Here the choice is not so clearly between a citizen speaking on matters of public concern and an employee speaking only on matters of personal interest. Certainly, Plaintiff's comments do not fall into the heart of First

Amendment protection; he was not expressing any idea, opinion or belief but was merely recounting his private business venture, and while doing so, revealing his identity and occupation. Nevertheless, the issues of prostitution and of a new brothel opening up are matters of some public concern. On the other hand, Plaintiff's comments were on a matter of primarily personal interest. Plaintiff's comments related to his private business venture as such. The newspaper article did not address any public debate over prostitution.

■ In determining whether employee speech addresses matters of public concern the district courts are directed to consider the content, form and context of a given statement, as revealed by the whole record. *Id.* at 147–48, 103 S.Ct. at 1690–91.

### i. Content

■ The content of Plaintiff's comments, published on April 16, 1991 does indicate in some small degree that Plaintiff's disclosure of his identity and occupation are of public concern. The content indicates Plaintiff revealed his identity and occupation in an attempt to defuse public criticism of a prison psychologist with his duties actually operating a brothel. Plaintiff attempted to reassure the public that there was no current conflict, because he was not actually operating the brothel, but that if he did open a brothel a conflict would develop and he would resign his NDOP position.[5]

The newspaper thought Plaintiff's identity and occupation were of sufficient import to discuss this as a substantive issue. Although

there was no real issue or public concern about Plaintiff's planned business venture affecting his professional responsibilities, disclosure of this information can be viewed as addressing those potential concerns.

The public interest in the fact that a single employee may be engaging in conduct which compromises that employees effectiveness is slight. Such a fact would have little effect on NDOP's overall ability to carry out its mission. Not every item of personal information relating to an employee's qualifications and abilities is a matter for legitimate public concern. Nevertheless, the Court believes the degree of potential conflict with Plaintiff's position as a psychologist combined with the general public concern with prostitution and new brothels indicates a degree of public concern with Plaintiff's identity and occupation.

The relevant content of Plaintiff's comments, published on April 15, 1991, indicates that Plaintiff's identity and occupation are of some public concern.

### ii. Form

Plaintiff's comments took the form of a responsible newspaper article. Plaintiff made these comments to a reporter for a mainstream newspaper, whose role was to inform the local community. The comments appeared in an informative article. Although Plaintiff's motivation in making these comments is of little significance here, the Court notes that the form of the article was not solicitation or pure commercial speech, but was informative.

---

**5.** This is viewing the evidence in the light most favorable to Plaintiff. It is at least equally plausible that Plaintiff's name and occupation were already known to the *Nevada Appeal*, this was going to be published and that Plaintiff agreed to an interview in order to put a positive interpretation or "spin" on the revelation.

Furthermore, not all employee issues are matters of public concern. This is a close question governed by matters of degree and not absolutes. The public does have a legitimate interest in the efficient and proper operation of public facilities. Nevertheless "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a

constitutional case[,]" something the Supreme Court has been reluctant to do. *Connick v. Myers*, 461 U.S. at 148–49, 103 S.Ct. at 1691. The Court further noted that "a statement not otherwise of public concern does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." *Id.* at 148, n. 8, 103 S.Ct. at 1691, n. 8.

Comments disclosing that an employee of NDOP, intends to open a brothel, while related to issues of public concern (issues of legalized abortion in general and the professionalism of state employees), are not a direct comment on or related to those issues of public concern.

The provision of factual information may often be necessary for public debate, yet it is not at the core of the First Amendment which protects ideas. The fact that Plaintiff is an NDOP employee is not an idea or opinion, but it is a fact which may be relevant to shape or affect public opinion. Plaintiff's informative disclosure of his identity and occupation thus provided information related to a matter of potential public concern.

### iii. Context

Finally, the Court discusses the context in which Plaintiff's disclosures arose. Plaintiff claims the disclosure of his identity, occupation and his ideas arose in the context of an alleged public debate over the legality of prostitution. Nothing in the April 16, 1991 article purports to address such a general issue. The context is more accurately described as a discussion of a private business venture containing novel and interesting issues, some of which are of public concern in other contexts, but not in the context in which the article appeared.

Assuming these revelations did arise in the context of a public debate over legalized prostitution, Plaintiff's identity and occupation seem, at best, marginally relevant to such a debate.

It may be argued that these comments arose in the context of a debate over the professionalism of public employees and the propriety of their involvement with legalized prostitution. However, Plaintiff has presented no evidence indicating any such public debate or concern existed either before or after the April 16, 1991 article.

Nowhere does it appear that in general the identity of brothel owner/operators is a matter of public concern generally or that it was in this case. Nothing the April 16, 1991 article indicates Plaintiff's position or ideas regarding prostitution itself other than his commercial interest in it.

For all of the above the Court concludes that Plaintiff's comments revealing his identity and occupation were on a matter of some, but very limited public concern.

### b. Plaintiff's Interest in Speaking is Outweighed by the Government's Interest In Operating the Prison System

The second prong of the test for determining whether Plaintiff's comments are entitled to First Amendment Protection is whether Plaintiff's interest in expressing himself on the matter at issue is outweighed by any injury the speech could cause to the efficient operation of the prison system and those services Plaintiff performed within the NDOP.

Important to this determination is the Supreme Court's consistent grant of

> greater deference to government prediction of harm used to justify restrictions of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large. Few of the [cases] involve tangible, present interference with the agency's operation. The danger in them is mostly speculative. . . . But [the Court has] given substantial weight to government employers reasonable predictions of disruption, even when the speech involved is on a matter of public concern.

*Waters*, —— U.S. —— at ——, 114 S.Ct. 1878 at 1886.

Plaintiff's interests in making the statements here at issue are relatively low. Plaintiff's comments were not at the core of free speech concerns. Plaintiff was not conveying an idea, opinion or belief. Rather Plaintiff was providing information. Plaintiff's interest in providing this information to the public was pecuniary. Plaintiff had a business interest, and Plaintiff's comments indicate that interest. None of Plaintiff's comments published in the April 16, 1991 article indicate a personal agenda, opinion or belief relating to legalized prostitution other than Plaintiff's desire to make money from it.

Furthermore, Plaintiff's interests in disclosing his identity and occupation are minimal. Plaintiff's comments indicate he intended to explain his belief that there was no current conflict of interest between his occupation as an NDOP psychologist and his plans to operate a brothel. Plaintiff's interest in disclosing his identity and occupation

were not linked to any issue of substantial public concern. As discussed in the **Content** section *supra,* the public interest in the personal affairs of a single employee are relatively limited.

The government's predictions of harm are reasonable even if they are speculative. It is reasonable to believe that revelation of Plaintiff's planned business venture would interfere with his counselling responsibilities. Even if it can be proven that such harms did not or would not occur, the Court is not prepared to second guess the determination that these revelations threatened to disrupt the efficient operation of the prison where Plaintiff was employed.

In light of the Court's determination that the relevant portions of Plaintiff's speech are of slight public concern and that Plaintiff's interest in such speech is outweighed by the injury such speech could cause to the State in efficiently operating the prison, the Court holds Plaintiff's speech is not protected by the First Amendment.

The Court need not address the issue raised in Plaintiff's motion (Doc. # 61) regarding whether these statements were the actual motivation for Plaintiff's termination. Even if the *Nevada Appeal* article of April 16, 1991 was the cause for Plaintiff's termination, Plaintiff's comments in that article were not entitled to First Amendment protection, and therefore, terminating Plaintiff on that basis states no First Amendment violation.

## D. SUBSTANTIVE DUE PROCESS CLAIMS

Plaintiff's motion for reconsideration etc. (Doc. # 61) did not seek reconsideration of the Court's ruling that Administrative Regulation # 355 is not unconstitutionally vague. Defendants did not address this issue in their opposition. (Doc. # 62) Nevertheless, Plaintiff's reply (Doc. # 66) seeks reconsideration of the Court's determination that Administrative Regulation # 355 was not unconstitutionally vague.

The Court refuses to consider any such motion for reconsideration as untimely and raised improperly in Plaintiff's reply. Furthermore, said motion does not raise any legitimate grounds for reversing or vacating the Court's previous determination that AR # 355 is not unconstitutionally vague.

## E. EXTENDED MOTION PERIOD

Due to the abnormally long period of time that has passed since the amended scheduling order (Doc. # 36) was last amended by order (Doc. # 39) extending the discovery period to July 30, 1993 and therefore extending the 45-day motion period, the procedural difficulties encountered in deciding the defendants' motions for summary judgment and any confusion caused by the Court's entry of judgment (Doc. # 59 & 60) the Court determines that a further period of time should be granted for making dispositive motions.

The Court therefore orders that the parties shall have a period of thirty (30) days from the entry of this order for the filing of motions pursuant to paragraph three (3) of the amended scheduling order. (Doc. # 36) Upon expiration of the date for the filing of said motions, *if there are no motions pending,* the Clerk shall issue a Pretrial Notice Order pursuant to Local Rule 190–3 in a form approved by the Court. Otherwise, the Pretrial Notice Order shall be issued after the pending motions are decided or as otherwise directed by the Court.

**IT IS, THEREFORE, HEREBY ORDERED that** Plaintiff's Motion for Clarification (Doc. # 61) is **GRANTED.** The entry of judgment is **VACATED,** and the Court's order (Doc. # 59) is **AMENDED** to delete the last sentence of said order which states "The clerk shall enter judgment accordingly." The judgment entered June 14, 1994 (Doc. # 60) is also vacated. Plaintiff's state law claims and some federal claims (violation of procedural due process) remain.

**IT IS FURTHER ORDERED that** Plaintiff's Motions for Reconsideration and for Relief Pursuant to Fed.R.Civ.P. 60(b) (Doc. # 61) are **DENIED** in their entirety. Plaintiff's motions raise issues not previously litigated and are based on legal argument and evidence not advanced at the time the Court entered its order (Doc. # 59). Furthermore, the motion fail to specify the legal argument it is based on or any particular deficiency in

the Court's order. The substance of Plaintiff's motions also lack merit.

**IT IS FURTHER ORDERED that** the Parties shall have an additional period of thirty (30) days from the date this order is entered within which to file any and all motions, including but not limited to discovery motions, motions to dismiss and motions for summary judgment (but excluding motions in limine). Upon expiration of the date for the filing of motions pursuant to this paragraph, *if there are no motions pending,* the Clerk shall issue a Pretrial Notice Order pursuant to Local Rule 190–3 in a form approved by the Court. Otherwise, the Pretrial Notice Order shall be issued after the pending motions are decided or as otherwise directed by the Court.