Linda K. SOSEBEE, Plaintiff–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.

No. 97–16709.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1998.

Decided Jan. 11, 1999.

---

Paul W. VanDerwerken, Las Vegas, Nevada, for the plaintiff-appellant.

W. Randolph Patton, Pearson & Patton, Las Vegas, Nevada, for the defendant-appellee.

Before: BROWNING, GOODWIN and SCHROEDER, Circuit Judges.

PER CURIAM:

The principal question on this appeal is whether a Plaintiff who sued her insurance company for bad faith denial of a claim and recovered only part of the relief she sought may bring a separate action alleging that the bad faith handling of the claim continued even after she filed her first action. This appeal raises questions under Nevada law of splitting a cause of action, res judicata, claim preclusion and the effect of failing to appeal a trial court's rulings. The trial court granted summary judgment to the insurer. We affirm.

## I. Background

Two months after a September 20, 1996, verdict and judgment that required State Farm to pay her medical expenses up to the limits of her policy ("*Sosebee I* "), Linda Sosebee filed a second action in state court ("*Sosebee II* "). In *Sosebee II*, she claimed that she had discovered, while the prior litigation was underway, evidence of "post-filing" bad faith, for which she sought damages over and above the breach of contract damages she had been awarded in *Sosebee I.* *Sosebee II* was removed to the district court on diversity grounds and assigned to a magistrate judge, who ruled that Sosebee had had her chance to prove her bad faith claim in *Sosebee I* and that the judgment in that action, which had not been appealed, was final and precluded further relief. Sosebee here appeals the dismissal of *Sosebee II*.

It is undisputed that Sosebee was injured in an automobile accident in 1994, while she was covered by a medical payment provision in an insurance policy issued by State Farm. State Farm began paying her medical bills and continued to pay until a dispute arose between the parties over the extent of injuries caused by the accident. Plaintiff claimed that her shoulder was injured in the accident. State Farm claimed that the degeneration of tissue revealed by an MRI was a pre-accident bursitis condition not covered by her medical pay insurance.

Sosebee's treating doctors (Briggs and Khalek) recommended surgery, which apparently caused the insurer to request an independent medical examination. Dr. Mark Reed was employed to conduct the independent examination. It was his opinion that Sosebee's shoulder complaints predated the accident. Although State Farm refused to pay, Sosebee went ahead with the surgery and filed *Sosebee I.*

The *Sosebee I* complaint alleged breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and violation of the Nevada Insurance Code. Sosebee demanded punitive as well as compensatory damages. Her complaint was met by the usual defense motions. In December 1995, the court granted summary judgment for State Farm on Sosebee's bad faith claim, stating that Sosebee had not presented evidence that State Farm's original denial of her claim was unreasonable. Sosebee's motion for reconsideration was denied.

During the course of discovery, a State Farm claims adjuster revealed that State Farm had hired a "biomechanical engineer", Dr. John Perry, to assess whether Sosebee could have injured her shoulder during the car accident. The claims adjuster testified in a deposition that the report was sought in relation to *ongoing adjustment* of Sosebee's claim and was expected in November 1995. Sosebee attempted to obtain a copy of Dr.

Perry's report prior to trial in *Sosebee I* but was unsuccessful. She did not subpoena Dr. Perry or make a formal discovery request. A few days before trial, Sosebee moved to reopen discovery, compel discovery and vacate the trial date, in order to obtain a copy of Dr. Perry's report, if one existed. She argued that the opinion, if it confirmed that the accident caused her injury, would support a "new cause of action" for bad faith based on State Farm's continuing duty to adjust Sosebee's claim while the lawsuit was pending. The record before this court does not reveal what opinion, if any, Dr. Perry formed about the source of Sosebee's injury, or whether he reported one to the insurer.

During the hearing on this motion, State Farm's attorney stated that Dr. Perry had been contacted at the attorney's request, had never been formally retained by State Farm, had not prepared a report, and the insurer did not plan to use him as a witness at the trial. Sosebee cited the claims adjuster's deposition testimony that Dr. Perry was contacted in connection with adjustment of the claim and statements by the attorney during the deposition to the same effect. The court denied Sosebee's motion, finding that Dr. Perry had been consulted in connection with the litigation and thus was a protected witness, and also stating that the evidence was irrelevant to the breach of contract claim and that the motion was untimely. Sosebee sought leave to amend her complaint to state a claim for continuing bad faith, but the court denied the motion. The case proceeded to trial.

Sosebee prevailed on her contract claim at trial and, after judgment was entered, moved again for reconsideration of her bad faith claim, which was denied. Sosebee did not appeal any of the rulings in *Sosebee I*. Instead, she filed a new action for "post-filing" bad faith (*Sosebee II*), which alleged that State Farm had failed to provide Dr. Reed with a number of documents, including Dr. Perry's report, that might have changed Dr. Reed's opinion of Sosebee's claim. As already noted, the district court dismissed *Sosebee II* under the doctrine of res judicata.

## II. Analysis

Under Nevada law, the duty of good faith on the part of an insurer does appear to continue after an initial denial of coverage and requires the insurer to consider new evidence brought to its attention after the initial denial. *See Ainsworth v. Combined Ins. Co. of Am.*, 104 Nev. 587, 763 P.2d 673, 675–76 (Nev.1988). Sosebee may have had the right to pursue a claim under *Ainsworth* given her allegations regarding Dr. Perry. However, she is now confronted by the preclusive effect of *Sosebee I*. Either she failed to plead this claim in *Sosebee I* or it was dismissed by the trial judge and she failed to appeal that decision.

Sosebee argues that the Nevada Supreme Court has permitted an insured to establish coverage and liability in one action and then, upon discovering evidence of bad faith on the part of the insurer, to bring a separate action for any damages caused by that bad faith conduct. The Nevada Court has condoned this practice, however, only where the bad faith was not actionable until after coverage and liability under the insurance contract had been established in the first proceeding. *See Pulley v. Preferred Risk Ins. Co.*, 111 Nev. 856, 897 P.2d 1101, 1102–1103 (Nev.1995) (second action alleged bad faith based on insurer's failure to comply with order of arbitrator who decided liability in first proceeding). Moreover, *Pulley* involved a bad faith claim in a dispute over uninsured motorist ("UM") coverage. Because of the special rules that apply to bad faith claims in UM cases, it is possible that *Pulley* is limited to that narrow context. *See Pemberton v. Farmers Ins. Exchange*, 109 Nev. 789, 858 P.2d 380, 383–84 (Nev.1993) ("legal entitlement" to recovery required before bad faith claim can be brought in UM case).

In any case, we find no authority to suggest that the Nevada courts would allow a separate bad faith action based on the insurer's refusal to consider new evidence that was uncovered during discovery in *Sosebee I*. While Nevada law may allow litigation of claims discovered after the first trial has already determined coverage and liability, it does not appear to allow piecemeal litigation of claims that were known or, in the exercise of reasonable discovery during litigation, should have been known while there was time to try all claims in one trial. If Nevada

**1218**

courts find it desirable to create law in this field, they undoubtedly have the power to do so. We find no evidence, however, that they have expanded the law of finality of judgments to provide Sosebee a second trial for her allegations of bad faith when she had an opportunity to try all her claims in one action. If the trial court erred and prevented Sosebee from consolidating her claims, then her proper remedy was to appeal that decision.

We express no opinion on the presence or absence of bad faith; we merely note that before the time to appeal the first judgment had expired, Sosebee knew, or competent discovery should have revealed, all the facts which she relied upon to file her second action. Because Sosebee had alleged bad faith in her first case and had moved to reopen discovery on the bad faith claim, there was an arguably meritorious basis for an appeal from the adverse rulings during the first litigation, had she taken such an appeal. By accepting the verdict and judgment and failing to appeal, Sosebee now has to confront the problem of res judicata as it relates to claims actually litigated and claims that could have been litigated in the first case.

We have examined this complex record with some care, because the second appeal presents questions of significance to the finality of judgments and the burden on the courts created by piecemeal litigation. The record brought up on this appeal contains nothing to support any part of the Plaintiff's theory that she was entitled to accept the judgment following the first trial and then, without preserving any rights she may have had under Nevada law through an appeal, to commence a new action for the fraud or bad faith she had discovered during the pendency of her first action. The second action was correctly barred by the doctrine of res judicata.

AFFIRMED.