**John CARSTARPHEN, an individual, Plaintiff,**

v.

**Richard MILSNER, an individual and Does 1 through 10, inclusive, Defendants.**

No. 3:07–CV–542–ECR–RAM.

United States District Court,
D. Nevada,
Reno.

Jan. 23, 2009.

John Scott Russo, Patrick O. King, King & Russo, Ltd., Minden, NV, for Plaintiff.

Richard G. Hill, Law Office of Richard Hill, Reno, NV, for Defendants.

## Order

EDWARD C. REED, JR., District Judge.

This case involves claims of breach of fiduciary duty brought by a minority shareholder against a director of a corporation. Plaintiff John Carstarphen ("Plaintiff") alleges that Defendant Richard Milsner ("Defendant"), a director of American Medflight, Inc. ("American Medflight"), breached his fiduciary duties in relation to certain transactions involving American Medflight stock, as well as certain business dealings between American Medflight and another company, Reno Flying Service, Inc. ("Reno Flying Service"), of which Mr. Milsner is majority shareholder.

Now before the Court is Defendant's Motion to Dismiss (# 14). Defendant argues that Plaintiff's first claim for relief fails to comply with the heightened pleading requirements of Fed.R.Civ.P. 9(b), and that Plaintiff's second claim for relief is barred by res judicata/claim preclusion.[1] Plaintiff has opposed (# 16) the motion, and Defendant has replied (# 18).

The motion is ripe, and we now rule on it.

## I. Background

Plaintiff John Carstarphen has been the owner of a one-third share of American Medflight's issued stock since the company's founding in 1993. (First Amended Complaint ("FAC") ¶ 6(# 4).) In 1993, Defendant Richard Milsner also owned a one-third share in the company, with the remaining one-third share owned by John Dawson, who is not a party to this lawsuit. (*Id.*) Since 1993, Mr. Carstarphen, Mr. Milsner, and Mr. Dawson have comprised American Medflight's three-person Board of Directors. (*Id.*) Mr. Dawson is also the president of American Medflight. (*Id.*) American Medflight has an Employee Stock Option Plan[2] ("AMF ESOP"), the

---

1. We note that Defendant argues in his reply brief that Plaintiff's first claim for relief is also barred by claim preclusion. However, "[t]he Court does not and will not make a practice of addressing the merits of issues first raised in a reply, as the opposing party is not afforded any opportunity to respond to new issues raised in a reply, which is ordinarily the last document submitted prior to the Court's rul-

ing on a motion." *Knapp v. Miller,* 873 F.Supp. 375, 378 n. 3 (D.Nev.1994); *see United States v. Bohn,* 956 F.2d 208, 209 (9th Cir.1992) (per curiam) (noting that courts generally decline to consider arguments raised for the first time in a reply brief).

2. Plaintiff calls this fund an "Employee Stock Option Plan," while Defendant refers to it as an "Employee Stock Ownership Program."

trustees of which are Mr. Milsner and Mr. Dawson. (*Id.*)

Mr. Milsner is the owner of ninety six and one-quarter percent of Reno Flying Service, which was incorporated in 1991. (*Id.* ¶ 7.) Mr. Dawson owns the remaining shares of Reno Flying Service. (*Id.*) In 1998, Mr. Dawson's one-third share of American Medflight stock was sold to Reno Flying Service. (*Id.* ¶ 14.) Thus, Mr. Milsner controlled two-thirds of American Medflight stock, one-third individually and one-third through his controlling interest in Reno Flying Service. (*Id.* ¶ 14.)

In 2005, AMF ESOP purchased both the one-third share of American Medflight owned by Mr. Milsner individually and the one-third share of American Medflight owned by Reno Flying Service at a price of $2310 per share. (*Id.* ¶ 16.) Mr. Carstarphen was invited to sell his one-third share to AMF ESOP at the same price, but only on the condition that Mr. Carstarphen dismiss certain other litigation he had pending in Nevada state court against Mr. Milsner and Mr. Dawson, among others. (*Id.* ¶ 15.) Mr. Carstarphen declined. (*Id.*)

Plaintiff's first claim for relief, alleging "breach of fiduciary duty and self dealing," arises out of these 2005 transactions involving the sale of American Medflight stock to AMF ESOP. At the time of the purchase of Mr. Milsner's and Reno Flying Service's shares in American Medflight, AMF ESOP did not have sufficient cash to pay the purchase price immediately. (*Id.*) The balance of the purchase price was financed via a promissory note. (*Id.*) The promissory note appeared on American Medflight's financial statements as a $3.4 million liability. (*Id.* ¶ 17.) With this liability, Mr. Carstarphen's shares were al-

legedly devalued from a market value of $2310 per share to approximately $400 per share, a loss of over $1.5 million in value. (*Id.* ¶ 17.) He argues that Mr. Milsner's role in implementing these transactions, which resulted in a loss for Mr. Carstarphen and a personal gain for Mr. Milsner, amounts to a breach of his fiduciary duties. (*Id.* ¶ 19–20.)

Plaintiff's second claim for relief arises out of certain business dealings between American Medflight and Reno Flying Service, which he alleges constitute breaches of Mr. Milsner's fiduciary duties. (*Id.* ¶ 23.) Specifically, Mr. Carstarphen objects to three categories of actions taken by American Medflight under the control of Mr. Milsner: (1) payment of a monthly "consulting fee" to Reno Flying Service, (2) leasing aircraft from Reno Flying Service instead of purchasing aircraft for American Medflight, and (3) using Reno Flying Service for repair of American Medflight airplanes instead of hiring in-house maintenance personnel. (*Id.*) Mr. Carstarphen alleges that each of these actions is taken for the benefit of Reno Flying Service and Mr. Milsner as majority shareholder of Reno Flying Service, in breach of Mr. Milsner's fiduciary duties to American Medflight and to Mr. Carstarphen as a minority shareholder of American Medflight. (*Id.*)

## II. Plaintiff's First Claim for Relief

Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud ... a party must state with particularity the circumstances constituting fraud...." Rule 9(b) imposes this heightened pleading requirement so that the fraud-action defendant "can prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.,*

The exact nomenclature is irrelevant for purposes of the present motion. We will refer to it by the consensus acronym.

486 F.3d 541, 553 (9th Cir.2007) (internal quotation marks omitted). Applying this particularity requirement, the Ninth Circuit has held that a plaintiff must plead "times, dates, places" and other details. *E.g. Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). "How much additional specificity is required depends on the nature of the individual case." *Arroyo v. Wheat,* 591 F.Supp. 141, 144 (D.Nev.1984).

■■■ Defendant asserts, and Plaintiff apparently does not dispute, that "[u]nder Nevada law, breach of fiduciary duty is a specie of fraud." (D.'s Motion 2(# 14).) In support of this proposition, Defendant cites *Golden Nugget, Inc. v. Ham,* 95 Nev. 45, 589 P.2d 173, 175 (1979). It does not appear to us, however, that *Golden Nugget* stands for such a broad statement. *Golden Nugget* stands for the proposition that when a corporate officer breaches his fiduciary duties by means of fraud, the appropriate statute of limitations under Nevada law is the one governing actions for fraud or mistake. *Id.* at 175. Certainly, a director of a corporation may breach his fiduciary duties by means of fraud, as the defendant in *Golden Nugget* did. *See id.* at 174 (defendant director usurped a corporate opportunity to lease property with intent to relet the property to the corporation at a substantial personal profit). It does not follow, however, that all breaches of fiduciary duty must be included under the rubric of fraud and therefore be subject to Rule 9(b)'s heightened pleading standard.

■■■ Turning now to Plaintiff's first claim for relief, we note that Plaintiff has pleaded facts in some detail, which we have summarized above. However, the facts pleaded do not appear to constitute fraud, at least in the common law sense of the term, which implies an intent to deceive on the part of the perpetrator. *See, e.g., Pac. & Arctic Ry. & Nav. Co. v. United Transp. Union,* 952 F.2d 1144, 1147 (9th Cir.1991) (stating common law definition of fraud). Here, despite the many facts pleaded, no details relating to any fraudulent acts by Defendant are discernible. There are no allegations that Defendant concealed or otherwise misrepresented anything with regard to the stock transactions of which Plaintiff complains, or that Plaintiff relied on any such misrepresentations.

Rather, the gravamen of the claim for relief is that Mr. Milsner's role in effectuating the stock transactions at issue was wrongful, which is somewhat different from saying it amounted to fraud. The only indication that fraud is at issue is the appearance of the word "fraudulent" in the assertion that Mr. Milsner's "breach of his fiduciary duties to Carstarphen was intentional, fraudulent and malicious...." (FAC ¶ 20(# 4).)[3]

The Ninth Circuit has held that "if particular averments of fraud are insufficiently pled under Rule 9(b), a district court should disregard those averments.... The court should then examine the allegations that remain to determine whether they state a claim." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1105 (9th Cir. 2003) (internal quotation marks omitted). Here, disregarding the word "fraudulent," the facts pleaded are more than sufficient to constitute a short and plain statement of a claim for breach of fiduciary duty. Un-

---

3. Whether this alleged breach should be more precisely characterized as, say, a breach of the duty of loyalty or breach of the duty of due care is a question for another day. Defendant's assertion, unsupported by authority, that this characterization of the alleged breach must be pleaded specifically in the complaint is without merit. *See* Fed.R.Civ.P. 8(a)(1).

der Fed.R.Civ.P. 8(a), Plaintiff need not allege more.

### III. Plaintiff's Second Claim for Relief

Defendant argues that Plaintiff's Second Claim for Relief fails to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, Defendant argues that Plaintiff's claim is barred by the doctrine of res judicata/claim preclusion because of a judgment entered in the Second Judicial District Court of the State of Nevada. (D.'s Motion 4 (# 14).)

### A. Federal Rule of Civil Procedure 12(b)(6) Standard

A motion to dismiss under Fed. R. Civ, P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)) (alteration in original). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir.1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *In re Stac Elecs.*, 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant to Fed.R.Civ.P. 12(b)(6) is normally limited to the complaint itself. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir.2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed.R.Civ.P. 12(b); *see United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." *Lee*, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. Finally, if adjudicative facts or matters of public record meet the requirements of Fed.R.Evid. 201, a court may judicially notice them in deciding a motion to dismiss. *Id.* at 909; *see* Fed.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### B. Analysis

When a party asserts the preclusive effect of a state court judgment, 28

U.S.C. § 1738 requires that a federal court give a state court judgment the same full faith and credit as that judgment would receive under the law of the state in which the judgment was rendered. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir.2004). Here we look to Nevada law to determine whether res judicata/claim preclusion bars Plaintiff's complaint.[4]

The Nevada Supreme Court has recently clarified Nevada law regarding res judicata and collateral estoppel, adopting the modern terminology of claim and issue preclusion, and establishing separate tests for each. *See generally Five Star Capital Corp. v. Ruby*, —— Nev. ——, 194 P.3d 709 (2008). The Nevada Supreme Court set forth a three-part test for whether claim preclusion should apply: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Id.* at 713 (footnote omitted).

The parties do not dispute that they are the same parties as in the state court lawsuit. Also, neither party disputes that the state court judgment was a valid final judgment. The judgment was based on a Nevada Rule of Civil Procedure mandating dismissal of an action not brought to trial within five years from the filing of the complaint. (D.'s Motion (# 14) Ex. 2; *see* Nev. R. Civ. P. ("NRCP") 41(e).) A dismissal pursuant to NRCP 41(e) is "a bar to another action upon the same claim for relief against the same defendants unless

the court otherwise provides." NRCP 41(e). Here, the Nevada court did not "otherwise provide," so the exception in the last clause of NRCP 41(e) does not apply. (*See* D.'s Motion (# 14) Ex. 2.) Thus, the only question here is whether Plaintiff attempts to relitigate the same claim, or any part of the same claim, that was or could have been brought in the first case.

 There is little question that both the state court action and Plaintiff's Second Claim for Relief in the present action allege the same type of claims. In the state court complaint, Plaintiff alleges that certain consulting fees were paid out to Reno Flying Service by American Medflight and that certain amounts were paid for aircraft maintenance, rental of aircraft, and other such things. (D.'s Motion (# 14) Ex. 1, ¶¶ 18 and 19). These alleged facts are incorporated by reference into a claim for relief for "breach of fiduciary duty and self dealing." (*Id.* ¶ 27.) In the First Amended Complaint in the present case, Plaintiff alleges in his Second Claim for Relief that Defendant "wrongfully engaged in self dealing and breached [his] fiduciary duties." (FAC ¶ 23(# 4).) Specifically, this alleged self-dealing and breach of fiduciary duty consisted of "a) paying Reno Flying Service a monthly 'consulting fee' ... b) failing ... to cause American Medflight to purchase the necessary aircraft, choosing instead to require American Medflight to lease aircraft from Reno Flying Service ... and c) failing to hire in-house maintenance personnel ... choosing instead to utilize Reno Flying service to make such repairs...." (*Id.*)

---

4. The state court judgment properly may be considered without converting the motion to dismiss to a motion for summary judgment. *See In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir.1996) ("[A]mple authority exists which recognizes that matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss.").

The one material difference between these claims is the period of time during which they are alleged to have taken place. The allegations in the state court complaint all refer to actions that took place prior to the filing of that complaint, that is, prior to March 3, 2003. (D.'s Motion (# 14) Ex. 1.) The First Amended Complaint in the present action is explicitly limited to actions after January 2005. (FAC ¶ 23(# 4).)

■ It is well established that a single course of wrongful conduct may give rise to more than a single cause of action. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327–28, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). Where two claims involve the same course of conduct, but involve a different time period, claim preclusion may not bar the subsequent suit. *Id.* at 328, 75 S.Ct. 865; *see Harkins Amusement Enters., Inc. v. Harry Nace Co.*, 890 F.2d 181, 183 (9th Cir.1989) ("Failure to gain relief for one period of time does not mean that the plaintiffs will necessarily fail for a different period of time."). Evidence of repeated conduct of the same type, but relating to a later period of time than was litigated in an earlier action, may involve evidence of the same type as the earlier period, but the temporal difference alone may mean that the evidence is not identical. *See Round Hill Gen. Improvement Dist. v. B–Neva, Inc.*, 96 Nev. 181, 606 P.2d 176, 178 (1980) (stating "if appellant's claim is based upon evidence of new and independent delinquencies," then there is no "identity of the facts").

The parties here, however, dispute how to define the time period covered by the state court judgment. Although the state court complaint was filed on March 3, 2003, judgment was not entered until April 28, 2008. (D.'s Motion (# 14) Ex. 2.) Defendant argues that conduct alleged in the present case dating from any period before

April 28, 2008, and involving the same course of conduct alleged in state court is barred by claim preclusion. (D.'s Reply 3(# 18).) That is, claim preclusion would bar any conduct that could have been raised in state court by amending the pleadings, even though no such amendment was made. Plaintiff, on the other hand, argues that the relevant date at which the claim preclusion bar would begin to operate is not the date of entry of judgment, but rather the filing of the complaint.

■ Generally, the date of final judgment in the first case marks the latest date at which the claim preclusion bar could apply. *See Lawlor*, 349 U.S. at 328, 75 S.Ct. 865 ("While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."). Under Nevada law, however, it is not necessarily the case that all claims arising before the date of final judgment in the first case are barred. *See Pulley v. Preferred Risk Mut. Ins. Co.*, 111 Nev. 856, 897 P.2d 1101, 1103 n. 2 (1995) (finding date of final judgment in first case "not dispositive" of issue of whether res judicata barred a second action). Neither party cites, nor have we discovered, a Nevada Supreme Court case which explicitly answers the question presented here. "When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 885 n. 7 (9th Cir.2000) (quoting *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir.1993)). Therefore, "we must use our best judgment to predict how that

court would decide it." *Capital Dev. Co. v. Port of Astoria,* 109 F.3d 516, 519 (9th Cir.1997) (quoting *Allen v. City of L.A.,* 92 F.3d 842, 847 (9th Cir.1996)).

■ We note that the Nevada Supreme Court's most recent jurisprudence on claim preclusion is informed by the practice of "the majority of state and federal courts." *Five Star Capital Corp.,* 194 P.3d at 713. We therefore predict that the Nevada Supreme Court would adopt the majority rule regarding when the claim preclusion bar takes effect in the circumstances of this case. It appears that the majority rule for claims for damages is that claim preclusion extends to claims in existence at the time of the filing of the original complaint in the first lawsuit and any additional claims actually asserted by supplemental pleading. *See Hatch v. Boulder Town Council,* 471 F.3d 1142, 1149 (10th Cir.2006) ("[A] claim should not be precluded merely because it is based on facts that arose prior to the entry of judgment in the previous action"); *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 530 (6th Cir.2006) (noting that the "majority rule" is " 'that an action need include only the portions of a claim due at the time of commencing the action' because 'the opportunity to file a supplemental complaint is not an obligation' ") (quoting 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4409 (2d ed. 2002)); *Baker Group v. Burlington N. & Santa Fe Ry.,* 228 F.3d 883, 886 (8th Cir.2000) (similar); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 126 F.3d 365, 369–70 (2d Cir.1997) ("For the purposes of res judicata, 'the scope of litigation is framed by the complaint at the time it is filed' ") (quoting *L.A. Branch NAACP v. L.A. Unified Sch. Dist.,* 750 F.2d 731, 739 (9th Cir.1984)); *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 915 (7th Cir.1993) (stating that "plaintiffs need not

amend filings to include issues that arise after the original suit is lodged"); *Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir.1992) (similar to *Rawe* ); *but see Dubuc v. Green Oak Twp.,* 312 F.3d 736, 750 (6th Cir.2002) (holding that, under Michigan law, when "alleged additional manifestation of retaliatory animus occurs before adjudication on the merits of the initial suit … the victim is obliged to amend his or her initial complaint to add these new allegations"); *Havercombe v. Dep't of Educ.,* 250 F.3d 1, 4–9 (1st Cir. 2001) (plaintiff's second action barred by claim preclusion because plaintiff could have amended complaint, pleadings insufficient to establish that acts occurring after complaint in first action constituted a separate actionable wrong).

■ In some cases, events occurring after the filing of the first complaint will still be barred by claim preclusion, even under the general majority rule. For example, in *Sosebee v. State Farm Mutual Automobile Insurance Co.,* 164 F.3d 1215 (9th Cir.1999), the Ninth Circuit held that the plaintiff's second action for bad faith, based on evidence discovered just before trial in the first action, was barred by claim preclusion. *Id.* at 1217–18. The *Sosebee* court so held because the plaintiff had alleged bad faith in her first action, had moved to delay trial and reopen discovery on that claim, and failed to appeal denial of that motion. *Id.* Another example is *L.A. Branch NAACP,* in which the claim preclusion bar expanded to include events through the close of trial in the first action because the parties brought those events into the scope of the litigation by stipulation. 750 F.2d at 739–740.

■ Contexts where a second claim depends on the allegation that a series of wrongful acts constituted a single scheme, rather than merely later actions of the same type, are another such example. *See*

*Monterey Plaza Hotel Ltd. P'ship v. Local 483 of the Hotel Employees and Restaurant Employees Union, AFL–CIO,* 215 F.3d 923, 927–28 (9th Cir.2000) (federal RICO claim based on acts litigated in two previous state court actions, as well as later acts, barred by claim preclusion because the new allegations did not establish an independent or different primary right under California law); *Feminist Women's Health Ctr. v. Codispoti,* 63 F.3d 863, 866–69 (9th Cir.1995) (similar, under Washington law). Other exceptions include cases where "the prior action (1) incorporated a settlement intended to govern future, related transactions between the parties; (2) resolved claims for declaratory or injunctive relief dealing with conduct persisting through trial or into the future; or ... (3) [served to] establish the legality of the continuing conduct into the future." *Hatch,* 471 F.3d at 1150–51 (internal quotation marks and citations omitted).

The present case does not appear to fall within any of these established exceptions to the general majority rule. The specific breaches of fiduciary duty alleged in this case were not in fact raised in the state court action, unlike the circumstances of *Sosebee.* There was apparently some attempt to negotiate a stipulation to bring the claims alleged in this lawsuit into the state court case, (P.'s Opp. (# 10) Ex. B), but unlike in *L.A. Branch NAACP,* such a stipulation was never actually entered into by the parties. Nor do any of the other exceptions discussed above apply to this case.

Furthermore, there does not appear to be any other reason why the majority rule should not apply here. Defendant expresses concern that, absent a claim preclusion bar to bringing such similar claims here and in the future, Plaintiff will be free to "file still another case against Milsner over the same issues." (D.'s Reply 6(# 18).) Defendant's concern, however, is not warranted. Plaintiff would be hard pressed to overcome the issue preclusion bar that would no doubt be asserted in such hypothetical future cases, assuming the issue of whether Mr. Milsner's actions were wrongful is actually litigated in this case. *See Five Star Capital Corp.,* 194 P.3d at 713–14 ("[C]laim preclusion applies to preclude an entire second suit that is based on the same set of facts and circumstances as the first suit, while issue preclusion ... applies to prevent relitigation of only a specific issue that was decided in a previous suit between the parties, even if the second suit is based on different causes of action and different circumstances.").

Accordingly, we determine the claim preclusion bar applies in the present case only to claims relating to events occurring on or before March 3, 2003, the date of the filing of the state court complaint. Because none of the claims in Plaintiff's Second Claim for Relief relates to events prior to that date, Defendant's motion to dismiss will be denied with regard to that claim.

## *IV. Conclusion*

Plaintiff's First Claim for Relief alleges sufficient facts to state a claim for relief, even after disregarding any allegations that relate to fraud or mistake. Plaintiff's Second Claim for Relief is not barred by the claim preclusive effect of the earlier state court judgment.

***IT IS, THEREFORE, HEREBY ORDERED THAT*** Defendant's Motion to Dismiss (# 14) is ***DENIED.***