2012 COA 22

**LOVELAND ESSENTIAL GROUP, LLC, a Minnesota limited liability company, Plaintiff–Appellant,**

v.

**GROMMON FARMS, INC., a Colorado corporation; Gary Grommon; and Connie Grommon, Defendants–Appellees.**

**No. 11CA0722.**

Colorado Court of Appeals, Div. V.

Feb. 2, 2012.

See also 251 P.3d 1109.

---

Cline Williams Wright Johnson & Oldfather, L.L.P., Tracy A. Oldemeyer, Fort Collins, Colorado, for Plaintiff–Appellant.

Erik G. Fischer, P.C., Erik G. Fischer, Fort Collins, Colorado, for Defendants–Appellees.

Opinion by Judge J. JONES.

¶ 1 This appeal concerns the second lawsuit between plaintiff, Loveland Essential Group, LLC (Buyer), and defendants, Grommon Farms, Inc., Gary Grommon, and Connie Grommon (collectively, Seller), arising from Buyer's purchase of commercial real property and assets from Seller. Buyer as-serts that its claims in this case arose after it filed the first lawsuit but before there was a final judgment in the first lawsuit.

¶ 2 The district court granted summary judgment in Seller's favor, concluding, as relevant here, that because Buyer had not sought to amend its complaint in the first lawsuit to assert the new claims, the doctrine of claim preclusion barred this subsequent lawsuit on the new claims. We conclude, however, that claim preclusion does not bar Buyer's action on the new claims if they arose after the first lawsuit was filed. Because there is a genuine issue of material fact as to when the new claims arose, we reverse the summary judgment and remand for further proceedings.

## I.   Background

¶ 3 Buyer entered into a real estate purchase agreement (RPA) and an asset purchase agreement (APA) with Seller to purchase certain commercial real property and business assets. The RPA required that there not be any encumbrances on the real property, other than those identified therein. The APA similarly required that there not be any encumbrances on the assets conveyed, other than those identified therein.

¶ 4 At the closing, Seller executed a Warranty Deed conveying the real property to Buyer and warranting that the property was free and clear of all encumbrances, except those identified in an attachment.

¶ 5 After closing, Buyer filed a complaint in Case No. 07CV 170 that, as amended, alleged in part that Seller had breached the RPA, the APA, and the Warranty Deed by conveying the real property and assets subject to a lease on part of the real property.

¶ 6 On August 8, 2008, about a year and a half after the original filing, and three months before trial thereon, Buyer learned that an Adjacent Property Reimbursement Agreement between the City of Loveland and the developer of the area in which the real property is located had been filed with the Larimer County Clerk and Recorder on August 1, 2008. The Reimbursement Agreement purports to obligate parties subject thereto to pay a portion of city street im-

provement and construction costs when applying for a permit to develop or redevelop property within the covered area. The City apparently seeks reimbursement of $794,871.69 from Buyer under the Reimbursement Agreement.[1]

¶ 7 Buyer moved to vacate the trial setting (then six weeks away) and to conduct additional discovery, arguing that such discovery was necessary "before it may move to amend the Complaint to add a claim that the Reimbursement Agreement is an additional ground for breach of the [RPA], the [APA], and/or the Warranty Deed." According to Buyer, such an amendment would "minimize the burden and expense on the parties and the Court and is in the best interests of justice so that all of Plaintiff's claims may be heard in one action." In the alternative, Buyer requested that, if the court denied the motion, it expressly rule that Buyer could pursue claims based on the Reimbursement Agreement in a separate lawsuit to "address potential claim preclusion ... defenses...."

¶ 8 The court granted Buyer's motion to vacate the trial date and permit additional discovery. It reset the trial for about two and a half months after the vacated date.

¶ 9 Buyer conducted additional discovery related to the Reimbursement Agreement. However, it did not move to amend its complaint in Case No. 07CV 170 to add claims based thereon. Rather, a week before trial on the claims in Case No. 07CV 170, it filed its complaint in this case, Case No. 09CV34, alleging that Seller had breached the RPA and the Warranty Deed by conveying the property subject to the Reimbursement Agreement. Thereafter, it conducted further discovery related to the claims in Case No. 09CV34.

¶ 10 After a bench trial on the claims in Case No. 07CV 170, the district court concluded that Seller had breached the RPA, APA, and the Warranty Deed by conveying the real property subject to the lease. On appeal, a division of this court affirmed the judgment in part, reversed it in part, and remanded the case for further proceedings. Essentially, the division upheld the judgment

to the extent it was based on breaches of the RPA and Warranty Deed, but remanded for further findings on Buyer's damages. *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109 (Colo.App.2010).

¶ 11 While the appeal of Case No. 07CV 170 was pending, Seller moved for summary judgment on Buyer's claims in this case, arguing that those claims were barred by the doctrine of claim preclusion because Buyer had not litigated them in the trial of Case No. 07CV 170. The district court agreed that the claims would be barred once the judgment in Case No. 07CV 170 had become final. Specifically, it found that because the claims in this case arose from the same agreements, Warranty Deed, and sale as those at issue in Case No. 07CV 170, Buyer was required to have asserted the claims pertaining to the Reimbursement Agreement in Case No. 07CV 170. But, because the judgment in Case No. 07CV 170 had not yet become final, the court held the motion for summary judgment in abeyance pending a final judgment. After the judgment in Case No. 07CV 170 became final, the court granted Seller's motion for summary judgment.

## II. Discussion

¶ 12 On appeal, Buyer contends that the district court erred by granting summary judgment based on claim preclusion because (1) the judgment in Case No. 07CV 170 was not final when the second case was filed; (2) Seller waived the affirmative defense of claim preclusion; (3) Buyer did not discover the alleged breaches of the RPA and Warranty Deed based on the Reimbursement Agreement until after it had filed the complaint in Case No. 07CV 170, and consequently there was no identity of subject matter; (4) for the same reason there was no identity of claims for relief; and (5) the court could not hold the summary judgment motion in abeyance pending a final judgment in Case No. 07CA 170. We agree with Buyer's fourth contention, and consequently we need not address the others.

---

1. Buyer asserts that all of the improvements and construction for which the city sought reimburse-

ment had been completed before it purchased the property.

## A. Standard of Review

¶ 13 We review a grant of summary judgment on the basis of claim preclusion de novo. *Wall v. City of Aurora*, 172 P.3d 934, 937 (Colo.App.2007); *Camus v. State Farm Mut. Auto. Ins. Co.*, 151 P.3d 678, 680 (Colo. App.2006). Summary judgment is appropriate only where the pleadings and supporting documents demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1074 (Colo.2010); *Grandote Golf & Country Club, LLC v. Town of La Veta*, 252 P.3d 1196, 1199 (Colo.App. 2011).

## B. Analysis

¶ 14 Claim preclusion (formerly known as res judicata[2]) bars "relitigation of matters that have already been decided [in a prior proceeding] as well as matters that could have been raised in a prior proceeding but were not." *Argus Real Estate*, 109 P.3d at 608; *accord Timm v. Prudential Ins. Co. of Am.*, 259 P.3d 521, 527 (Colo.App.2011). A claim in a second judicial proceeding is precluded by a previous judgment where there is (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity of or privity between the parties to the two actions. *Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645, 668 (Colo.2011). We consider only the third factor here.

### 1. Identity of Claims for Relief

¶ 15 In determining whether there is identity of claims for relief, the focus of the inquiry is " 'the injury for which relief is demanded, ... not ... the legal theory on which the person asserting the claim relies.' "

*Jackson v. Am. Family Mut. Ins. Co.*, 258 P.3d 328, 331 (Colo.App.2011) (ultimately quoting *Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 199 (Colo.1999)); *accord Argus Real Estate*, 109 P.3d at 609. Claim preclusion bars litigation of claims that previously were or might have been decided only "if the claims are tied by the same injury." *Argus Real Estate*, 109 P.3d at 609. Claims are tied by the same injury where they concern " 'all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.' " *Id.* (quoting Restatement (Second) of Judgments § 24(1) (1982)). In determining what factual grouping constitutes a transaction, the court considers " 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.' " *Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278, 281 (Colo.App.2006) (ultimately quoting Restatement (Second) of Judgments § 24(2)); *accord Camus*, 151 P.3d at 680.

¶ 16 Generally, a contract is considered to denote a single transaction for the purpose of claim preclusion, and therefore claims for different breaches of a contract ordinarily must be brought in the same action. *See Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335–36 (10th Cir.1988) (but noting that this is the case "so long as the breaches antedated the original action"); *LaPoint v. Amerisource-Bergen Corp.*, 970 A.2d 185, 194 (Del.2009); Restatement (Second) of Judgments § 25 comment b, illus. 2; Restatement of Judgments § 62 comment h (1942); *see also Salazar*, 148 P.3d at 281; *see generally* 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4409, at 212 (2d ed. 2007).[3] A later claim merely arising from the same contract as an earlier claim is not necessarily

---

2. We use the term claim preclusion to distinguish the concept from the separate doctrine of issue preclusion. *See Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo.2005).

3. Based on these authorities, and the Colorado authorities cited above, we respectfully disagree with the concurrence's analysis. In our view, the concurrence's analysis construes the "transaction" at issue too narrowly. The claims at issue in the two actions are for breaches of the same instruments, and are based on the same obligations in those instruments. Unless the later claims are after-arising claims, they must be regarded as arising from the same transaction as the claims in the first action lest the concern for avoiding piecemeal litigation underlying the claim preclusion doctrine be thwarted.

barred, however. Because, as noted, a claim is only precluded if it could have been raised and decided in the earlier proceeding, *Argus Real Estate,* 109 P.3d at 608–09, an action on a later claim is not barred, for example, if the claim arose after the original judgment, and therefore could not have been litigated in the original action, *see Farmers High Line,* 975 P.2d at 203; *In re Water Rights of Midway Ranches Prop. Owners' Ass'n, Inc.,* 938 P.2d 515, 525–26 (Colo.1997); *see also Holnam, Inc. v. Indus. Claim Appeals Office,* 159 P.3d 795, 798 (Colo.App.2006); *Executive Fitness, LLC v. Healey Bldg. Ltd. P'ship,* 290 Ga.App. 613, 660 S.E.2d 26, 28–29 (2008); *Estate of Raven v. Lincoln Nat'l Life Ins. Co.,* 51 So.3d 147, 152 (La.Ct.App.2010).

¶ 17 This appeal, however, requires us to consider the intermediate circumstance of a claim allegedly arising after the original complaint was filed, but before the court rendered judgment thereon (an after-arising claim). We find one recent Colorado case instructive.

¶ 18 In *Camus,* Judge Webb authored a concurrence in which he concluded that the bar against claims that might have been decided in an earlier action does not extend to claims which arose after the filing of the original pleading in that action, but before

judgment. 151 P.3d at 682, 684–85 (Webb, J., specially concurring). In so concluding, Judge Webb relied on federal cases which have reasoned that claim preclusion does not bar a later action for after-arising claims because, even though a plaintiff *can* seek to supplement its original complaint to add such claims, Fed.R.Civ.P. 15(d) does not *require* it to seek leave to file such a supplemental pleading. *Id.* at 683–84 (collecting cases and observing that "[t]he language of C.R.C.P. 15(d) is identical to the language of Fed. R.Civ.P. 15(d)"); *see* Fed.R.Civ.P. 15(d); C.R.C.P. 15(d) ("Upon motion of a party the court may ... permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.").[4]

¶ 19 As Judge Webb recognized in his concurrence in *Camus,* all federal appellate courts that have addressed the issue have concluded that because the litigation's scope is framed by the complaint at the time it is filed, claim preclusion generally does not bar a later suit on after-arising claims that were not pled in the earlier action. 151 P.3d at 683–84.[5] Most state courts that have considered the issue have reached the same conclusion.[6] And, with respect to

4. We recognize that in *Salazar* a division of this court concluded that it was reasonable to have expected the plaintiff to have amended her complaint to include claims of which she became aware after the original filing but four months before trial thereon. 148 P.3d at 282. However, the division addressed only the issue of whether litigating the after-arising claims in the first trial would have conformed to the parties' expectations, not whether claim preclusion generally bars later litigation of after-arising claims. *See id.*

5. *See, e.g., Morgan v. Covington Twp.,* 648 F.3d 172, 177–78 (3d Cir.2011); *Smith v. Potter,* 513 F.3d 781, 783 (7th Cir.2008); *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 529–30 (6th Cir.2006) (applying Kentucky law); *Storey v. Cello Holdings, L.L.C.,* 347 F.3d 370, 384–86 (2d Cir.2003); *Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.,* 228 F.3d 883, 886 (8th Cir. 2000); *Mitchell v. City of Moore,* 218 F.3d 1190, 1202–03 (10th Cir.2000); *Florida Power & Light Co. v. United States,* 198 F.3d 1358, 1360–61 (Fed.Cir.1999); *Manning v. City of Auburn,* 953 F.2d 1355, 1359–60 (11th Cir.1992) (applying Alabama law); *Young-Henderson v. Spartanburg Area Mental Health Ctr.,* 945 F.2d 770, 774 (4th

Cir.1991) (in dicta); *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.,* 750 F.2d 731, 739 (9th Cir.1984) (applying California law); *see also In re Belmont Realty Corp.,* 11 F.3d 1092, 1100 (1st Cir.1993).

6. *See Chiepalich v. Coale,* 36 So.3d 1, 4–5 (Ala. 2009); *Allied Fire Protection v. Diede Constr., Inc.,* 127 Cal.App.4th 150, 25 Cal.Rptr.3d 195, 199–201 (2005); *LaPoint,* 970 A.2d at 194; *Bolte v. Aits, Inc.,* 60 Haw. 58, 587 P.2d 810, 812–14 (1978); *Durrant v. Quality First Mktg., Inc.,* 127 Idaho 558, 903 P.2d 147, 149–51 (App.1995); *Coomer v. CSX Transp., Inc.,* 319 S.W.3d 366, 373–74 & n. 23 (Ky.2010) (citing Judge Webb's concurrence in *Camus); Roche v. Roche,* 22 Mass.App.Ct. 306, 493 N.E.2d 523, 526 (1986); *Banks v. LAB Lansing Body Assembly,* 271 Mich. App. 227, 720 N.W.2d 756, 758–59 (2006); *Drewitz v. Motorwerks, Inc.,* 728 N.W.2d 231, 239–40 (Minn.2007); *Schwartz v. State Dep't of Revenue Admin.,* 135 N.H. 470, 606 A.2d 806, 809 (1992); *Brooks Trucking Co., Inc. v. Bull Rogers, Inc.,* 139 N.M. 99, 128 P.3d 1076, 1081–82 (App.2006); *Hoover v. County of Broome,* 2009 WL 1564730, *2 (N.Y. Sup.Ct. No.2008–1102, June 2, 2009) (unreported disposition); *Allison v. Montgomery,*

breach of contract claims specifically, many secondary authorities have recognized that because "[m]ultiple claims may arise for breach of a single contract by distinct acts at separate times," only the breaches "occurring prior to commencement of the first action constitute part of a single claim or cause of action." 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4409, at 212 (2d ed. 2007); *see* Restatement (Second) of Judgments § 26 comment g; 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.23[1], at 131–61 to –62 (3d ed. 2011); 13 Sarah Howard James, *Corbin on Contracts* § 72.4(1), at 468 (rev. ed. 2003).

¶ 20 However, some state courts have concluded that because after-arising claims could have been decided in an earlier action through an amended or supplemental

118 Or.App. 118, 846 P.2d 435, 436–37 (1993); *Belliveau Bldg. Corp. v. O'Coin*, 1997 WL 839893, *5 (R.I.Super.Ct. No. 90–2812, Feb. 19, 1997) (unpublished decision); *Du–Al Mfg. Co. v. Sioux Falls Constr. Co.*, 487 N.W.2d 29, 32 (S.D.1992); *Macris & Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1219–20 (Utah 2000); *Spicer v. Va. Birth–Related Neurological Injury Comp. Program*, 48 Va.App. 613, 633 S.E.2d 732, 736 n. 6 (2006); *see also Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319–20, 47 S.Ct. 600, 71 L.Ed. 1069 (1927) ("[A] judgment or decree upon the merits concludes the parties as to all media concludendi or grounds for asserting the right, *known when the suit was brought*." (emphasis added)); *Executive Fitness*, 660 S.E.2d at 28–29 (noting that claim preclusion does not bar a later action on claims arising after the first action commences, but addressing claims arising after the first judgment); *Whalen v. Connelly*, 621 N.W.2d 681, 685 (Iowa 2000) (same as *Executive Fitness*); *Ardary v. Stepien*, 2004 WL 253491, *3 (Ohio Ct.App. No. 82950, Feb. 12, 2004) (unpublished opinion) (same as *Executive Fitness*).

7. "Amended and supplemental pleadings differ in that the former relate to matters occurring before the filing of the original pleading ... while the latter concern events subsequent to the original pleading...." *Eagle River Mobile Home Park, Ltd. v. Dist. Court*, 647 P.2d 660, 662 n. 3 (Colo.1982); *accord Lutz v. Dist. Court*, 716 P.2d 129, 131 n. 1 (Colo.1986); 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1504, at 254 (3d ed. 2010). Consequently, a plaintiff may include an after-arising claim in the original action in one of two ways: (1) through an amended pleading, if the events giving rise to the claim occurred before the original filing but were not discovered until after that filing; and (2) through a supplemental pleading, if the events occurred after the filing. *See* C.R.C.P.

pleading,[7] claim preclusion does bar a later action on such claims.[8]

¶ 21 We find the majority rule and Judge Webb's concurrence in *Camus* persuasive, for four reasons.

¶ 22 First, none of the cases holding that subsequent actions on after-arising claims are barred by claim preclusion acknowledge or address the countervailing federal or state authority. *See, e.g., CenTrust*, 469 S.E.2d at 468–69; *Altair*, 252 Ill.Dec. 101, 742 N.E.2d at 356; *Kinsman*, 804 N.Y.S.2d at 431–32; *Mohamed*, 796 S.W.2d at 756.

¶ 23 Second, under C.R.C.P. 15(a) and (d), the filing of an amended or supplemental pleading is expressly optional, not mandatory. *See Camus*, 151 P.3d at 682, 683–84 (Webb, J., specially concurring). The

15(a), (d); *Lutz*, 716 P.2d at 131 n. 1 (the plaintiff could have filed an amended pleading where the changes related to events that had happened before the complaint was filed, but were not discovered until after the filing). Whether the pleading is labeled as amended or supplemental, however, is largely immaterial to our analysis. *See Eagle River*, 647 P.2d at 662 n. 3; *see also United States v. Vorachek*, 563 F.2d 884, 886 n. 1 (8th Cir.1977); 6A *Federal Practice and Procedure* § 1504, at 254–55 ("Parties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabeling is common. These misnomers are not of any significance, however.").

8. *See CenTrust Mortg. Corp. v. Smith & Jenkins, P.C.*, 220 Ga.App. 394, 469 S.E.2d 466, 468–69 (1996); *Altair Corp. v. Grand Premier Trust & Inv., Inc.*, 318 Ill.App.3d 57, 252 Ill.Dec. 101, 742 N.E.2d 351, 356 (2000) (addressing circumstances where the plaintiff learned of the after-arising claim long before final judgment and therefore had time to act); *Kinsman v. Turetsky*, 21 A.D.3d 1246, 804 N.Y.S.2d 430, 431–32 (N.Y.App.Div.2005); *Mohamed v. Exxon Corp.*, 796 S.W.2d 751, 756 (Tex.App.1990); *see also AMEC Civil, LLC v. State Dep't of Transp.*, 41 So.3d 235, 242–43 (Fla.Dist.Ct.App.2010) (where the plaintiff filed a breach of contract action before final acceptance of the contract, its premature filing prevented joinder of all the contract-based claims and, therefore, the after-arising breach of contract claims were precluded); *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 394–96 (Tenn.Ct.App.2009) (rejecting the plaintiff's argument that "an issue only 'could have been raised' if the moving party had an unfettered right to raise it"; addressing, however, an alternative theory supporting the original claim and not a new, distinct claim).

mere existence of the doctrine of claim preclusion does not render the rule's permissive language mandatory. *See Pleming v. Universal–Rundle Corp.,* 142 F.3d 1354, 1357 (11th Cir.1998) ("the doctrine of [claim preclusion] does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim"); *Manning,* 953 F.2d at 1360 (Fed.R.Civ.P. 15 governs which claims should have been brought earlier, not the claim preclusion doctrine); *Macris,* 16 P.3d at 1220 (because the Utah Rules of Civil Procedure do not require amendment of pleadings to add additional claims, requiring pleadings to be amended for claim preclusion purposes would be inconsistent with those rules). In similar circumstances, a division of this court concluded that because assertion of a cross-claim is expressly permissive under C.R.C.P. 13(g), cross-claims "trigger claim preclusion only if they were actually raised and decided in the earlier action." *Cont'l Divide Ins. Co. v. W. Skies Mgmt., Inc.,* 107 P.3d 1145, 1147 (Colo. App.2004) (citing federal cases).

¶ 24 Moreover, we observe that it is within the district court's discretion whether to permit such pleadings after an answer or other responsive pleading has been filed. C.R.C.P. 15(a), (d). And the court may permit a supplemental pleading only "upon reasonable notice and upon such terms as are just." C.R.C.P. 15(d). Consequently, even if a party chooses to move to amend or supplement its complaint, the court may deny the motion. *See id.; cf. Role Models Am., Inc. v. Penmar Dev. Corp.,* 394 F.Supp.2d 121, 133 (D.D.C.2005) ("where the law restricts the circumstances in which amendment is allowed, it would be untenable to define expansively the [claim preclusion] boundaries of a claim because, in that setting, plaintiffs would be forced to bring any remotely conceivable claim at the outset of litigation, regardless of merit, or risk losing the opportunity to assert it"), *aff'd,* 216 Fed.Appx. 5 (D.C.Cir. No. 05–5421, Feb. 2, 2007) (unpublished judgment).

¶ 25 Third, requiring a party to amend or supplement its original pleading every time an additional claim arises before entry of judgment could substantially disrupt the proceedings and complicate litigation of the original claim. *See Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 915 (7th Cir.1993); *Drewitz,* 728 N.W.2d at 240. And relatedly, if the claim arises shortly before trial, the claimant may be forced to litigate a claim that is not fully developed. *See Camus,* 151 P.3d at 682 (Webb, J., specially concurring); *see also Yapp v. Excel Corp.,* 186 F.3d 1222, 1227 n. 4 (10th Cir.1999) (noting that claim preclusion may not bar claims where the parties did not have a full and fair opportunity to litigate the claims); *Russo v. Baxter Healthcare Corp.,* 919 F.Supp. 565, 571 (D.R.I.1996) ("parties cannot be required to add to their original suits claims that arise on the eve of trial"); *Roche,* 493 N.E.2d at 526 (though Massachusetts' rules of procedure are sufficiently flexible to permit amendments to a complaint based on discoveries made during trial, "[r]ealistically appraised, . . . the prospects for success in altering the scope and nature of the action so late in the day would be daunting"); *cf. Durrant,* 903 P.2d at 150 (noting that if the plaintiff had brought the after-arising claim in the first action, he may have violated the requirement that a pleading be well-grounded in fact and warranted in law).

¶ 26 If a claim arises shortly after the original filing, or if, as here, the court postpones the trial date and permits additional discovery on the after-arising claim, requiring an amendment likely would not cause substantial disruption or other hardship. However,

> [t]he rules that expand the dimensions of a cause of action as time goes on require clear identification of a stopping point. . . . The difficulty presented by th[e] approach [requiring the inclusion of after-arising claims] lies in identifying a suitable alternative stopping point. Substantial disruption could result from forced amendment at any time after significant discovery has been accomplished, and it is hard to justify any test relating to the progress of discovery or other pretrial events so clear that plaintiffs could afford to apply it without seeking explicit judicial guidance.

18 *Federal Practice and Procedure* § 4409, at 213, 218–19; *accord Doe,* 985 F.2d at 915; *see also Russo,* 919 F.Supp. at 571 ("any cut-

off after the filing date would be arbitrary and unwieldy"); *Green v. Ill. Dep't of Transp.*, 609 F.Supp. 1021, 1026 (N.D.Ill. 1985) ("[I]t is difficult, if not impossible, for a court to draw a line as to when in a previous lawsuit a plaintiff should have tried to add a later-maturing claim. A rule requiring amendment would be difficult for courts and plaintiffs to apply and could disrupt or needlessly complicate the first suit."). Therefore, a bright-line rule that subsequent actions on after-arising claims are not barred will engender more predictable results than a rule requiring fact-intensive inquiry into the claims and the progress of the original action.

¶ 27 Fourth, "[a] main purpose of the general rule [that claim preclusion bars a later action on claims arising out of the same transaction as the original action] is to protect the defendant from being harassed by repetitive actions based on the same claim." Restatement (Second) of Judgments § 26 comment a; *see also Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo.1999). Where a plaintiff is unaware of another, potentially related claim when it commences its original action, "[the] plaintiff's purpose in bringing the subsequent action [is] not ... to consciously and unreasonably vex or harass the defendant." *Bolte*, 587 P.2d at 814. Consequently, barring a later action on such after-arising claims does not serve the purpose of preventing harassing, repetitive actions. *See id.*; *accord Soren–Hodges v. Blazer Homes, Inc.*, 204 Or.App. 86, 129 P.3d 196, 201–02 (2006); *see also Genereux v. Bruce*, 2011 WL 1337983, *—— (R.I.Super. Ct. Nos. PC 09–7295, PC 09–7296, PC 09–7297, PC 10–0926, PC 10–3045, Apr. 4, 2011) (it is improper to apply claim preclusion where there is no risk of the defendant being harassed by repetitive actions based on the same claim).

¶ 28 We therefore conclude that claim preclusion does not bar a later action on claims which arise after the original action is filed, but before judgment in the original action.

### 2. Application

¶ 29 We now consider whether Buyer's claims based on the Reimbursement Agreement are after-arising claims, and conclude that they may be.

¶ 30 For the purpose of claim preclusion, a claim arises after the filing of the original action where, at the time of the filing, the party did not know of the facts giving rise to the claim and could not have discovered them through the exercise of reasonable diligence. *See Doe*, 985 F.2d at 914; *Allied Fire*, 25 Cal.Rptr.3d at 200; *cf.* § 13–80–108(6), C.R.S.2011 (for statute of limitation purposes, a cause of action for breach of contract or breach of warranty accrues on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence).[9] Thus, even if a defendant breaches a contract before the first action's filing, if the plaintiff is ignorant of the breach until after the filing and its ignorance is not due to its own negligence, the claim on the breach is considered an after-arising claim. *See Allied Fire*, 25 Cal.Rptr.3d at 199–200 (refusing to distinguish between a new fact and a newly discovered fact in determining whether a claim is precluded); *LaPoint*, 970 A.2d at 194; *Bolte*, 587 P.2d at 812–14; *Du–Al*, 487 N.W.2d at 32; *see also Coomer*, 319 S.W.3d at 373–74 (though the injuries giving rise to the after-arising claims occurred prior to the original filing, they did not accrue until after that date).

¶ 31 Here, Grommon Farms represented and warranted in section 5.01 of the RPA that, as of the closing date:

> f) [Grommon Farms] will transfer the Property free and clear of all liens and encumbrances other than those agreed to [in the RPA]; and
>
> . . .
>
> j) [Grommon Farms] has received no notices with respect to improvements planned which may result in special assess-

---

9. We emphasize that a court need only employ this analysis where the claims arise from the same transaction or series of transactions. "[E]ven if a plaintiff is aware of the factual basis for a suit at the filing of another suit, he or she is not obligated to bring all claims together if they do not arise out of the same transaction." *Doe*, 985 F.2d at 914; *see Argus Real Estate*, 109 P.3d at 609.

ments being levied against the Real Property in the future and, to [Grommon Farms'] knowledge, there are no such improvements planned which may result in special assessments being levied against the Real Property in the future.

Similarly, Grommon Farms covenanted in the Warranty Deed that the property was "free and clear from all former and other grants, bargains, sales, liens, taxes, assessments, encumbrances and restrictions of whatever kind or nature whatsoever," aside from certain enumerated exceptions. Buyer averred in opposition to Seller's motion for summary judgment that, despite these provisions, Seller never mentioned any potential right of reimbursement and Buyer had no knowledge of any such right before the city notified it of the Reimbursement Agreement.

¶ 32 Seller asserts, however, that two letters from Buyer to Mr. Grommon before the sale's closing suggest that Buyer may have been aware of the right of reimbursement. In these letters, Buyer acknowledged that a portion of the RPA "appears to impose certain restrictions on development and may subject the owner of the parcel to certain fees, assessments or recapture provisions for the installation of utilities and improvements," and said that, before closing, it "must be satisfied that this item does not subject them to fees, assessments, or recapture provisions or otherwise block development of the Property." It is unclear, however, whether the letters refer to the Reimbursement Agreement-related restrictions or to some other restrictions. Seller concedes that "[t]he record is not clear on this" and that "there is, at a minimum, a dispute of fact whether Buyer was aware of the reimbursement agreement or its possibility prior to closing."

▪ ¶ 33 Consequently, we conclude that there is a genuine issue of material fact as to whether Buyer knew or should have known about the Reimbursement Agreement-based breaches before it filed its complaint premised on the lease-based breaches. Therefore, we further conclude that the district court erred by granting summary judgment in Seller's favor. *See Grandote*, 252 P.3d at 1199; *Wall*, 172 P.3d at 936; *see also Cork v.*

*Sentry Ins.*, 194 P.3d 422, 425 (Colo.App. 2008) (because when a cause of action accrues is a question of fact, summary judgment may only be granted where the undisputed evidence shows the plaintiff discovered or reasonably should have discovered the claim as of a particular date); *cf. TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 121 F.Supp.2d 349, 363 (S.D.N.Y.2000) (where the defendant had a duty to disclose all relevant facts concerning its assets prior to the transaction and there was no evidence indicating that the plaintiff should have been on notice of the alleged defect in title, the plaintiff could not have discovered the existence of the ownership issue with due diligence).

¶ 34 We are not persuaded to the contrary by the cases on which Seller relies. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736 (6th Cir.2002) (applying Michigan law); *Carstarphen v. Milsner*, 594 F.Supp.2d 1201 (D.Nev. 2009) (applying Nevada law). *Dubuc* and *Carstarphen* recognized an exception to the general rule that an action on an after-arising claim is not barred where the events giving rise to the after-arising claim are merely additional manifestations of the series of wrongful acts alleged in the first claim. *See Dubuc*, 312 F.3d at 748–51 (further acts in a series of allegedly retaliatory acts); *Carstarphen*, 594 F.Supp.2d at 1210; *see also McCoy v. Michigan*, 369 Fed.Appx. 646, 651–52 (6th Cir. No. 08–1641, Mar. 12, 2010) (unpublished opinion) (applying Michigan law) (clarifying that *Dubac's* holding only precludes claims based on "an additional manifestation of the initial claim," not new and independent claims that arise after the original pleading's filing); *Sosebee v. State Farm Mut. Auto. Ins. Co.*, 164 F.3d 1215, 1216–18 (9th Cir.1999) (continuing instances of bad faith in insurance adjustment).

¶ 35 Here, the alleged breaches based on the Reimbursement Agreement give rise to separate claims from those based on the lease; the breaches based on the Reimbursement Agreement are not merely additional manifestations of the breaches occasioned by the lease. Thus, the exception addressed in *Dubuc* and *Carstarphen* does not apply here. *Cf. Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997) (the two pro-

ceedings "g[a]ve rise to separate statutory wrongs—just as a party who breaches a contract twice in the same way has committed two separate breaches"); *Ornauer v. Penn Mut. Life Ins. Co.,* 52 Colo. 632, 632, 636–37, 123 P. 650, 650–51 (1912) (where the plaintiff brought an action to recover commissions under a contract, then, while the first action was pending, brought two additional actions to recover contract commissions accruing after the original filing, claim preclusion did not bar the later actions because the original and later causes of action were different); *Tatum v. Basin Res., Inc.,* 141 P.3d 863, 868 (Colo.App.2005) (the homeowners' second injury to their residence as a result of a second occurrence of subsidence was a separate injury).

¶ 36 Because of our resolution of this issue, we need not address the other issues Buyer raises.

¶ 37 The judgment is reversed and the case is remanded for further proceedings.

¶ 38 Judge FURMAN concurs.

Judge CARPARELLI concurs in part and dissents in part.

Judge CARPARELLI concurring in part and dissenting in part.

¶ 39 I agree that the district court erred when it concluded the claims stated in the January 2009 complaint are precluded, and, on that basis, granted summary judgment. I also agree that "the alleged breaches based on the Reimbursement Agreement give rise to separate claims from those based on the lease." However, I reach this conclusion based solely on the application of the four-part test of claim preclusion and the determination that there is not an identity of claims for relief in the two lawsuits. In addition, I disagree with the scope of the remand.

¶ 40 Unlike the majority, I conclude that the February 2007 claim regarding the lease and the January 2009 claim regarding the road construction reimbursement allege different events, different transactions, and different injuries. They also seek markedly different relief. Thus, based on a pragmatic determination of what constitutes a factual grouping, as discussed in *Salazar v. State*

*Farm Mutual Automobile Insurance Co.,* 148 P.3d 278, 281 (Colo.App.2006), I conclude there is no identity of claims for relief.

¶ 41 I disagree with the majority's apparent conclusion that because these two claims assert breaches of the same contract, there is an identity of the claims for relief, and that the January 2009 claim is precluded unless it is "after-arising." The majority's conclusion is based, in part, on the Tenth Circuit's decision in *Petromanagement Corp. v. Acme-Thomas Joint Venture,* 835 F.2d 1329 (10th Cir.1988), which, in my view, is distinguishable. To the extent that it is also based *Argus Real Estate, Inc. v. E–470 Public Highway Authority,* 109 P.3d 604 (Colo. 2005), and *Salazar,* I conclude that those cases do not support the majority's conclusion that there is an identity of claims when the breaches and claims for relief are as disparate as they are here.

¶ 42 In my view, the majority's extensive discussion of C.R.C.P. 15(d) and "after-arising claims" is not only unnecessary, but implies that even when there is no identity of claims, a claim asserting a disparate breach of a contract is precluded unless it is "after-arising." This may lead to litigation about the meaning of "after-arising claims," and, rather than create a "bright-line rule," weaken the longstanding four-part test.

¶ 43 Accordingly, although I concur in reversing the judgment, I would remand with directions to deny the seller's motion for summary judgment—claim preclusion, to address any pending motions, and to proceed with litigation of the buyer's January 2009 claim.

## I. The Seller's Representations and Warranties

¶ 44 On March 31, 2006, the seller agreed to sell an RV park to the buyer. Among other things, the seller represented and warranted that it would transfer the property "free and clear of all liens and encumbrances other than those agreed to in the agreement."

¶ 45 In May 2006, the seller executed a warranty deed in which it conveyed the prop-

erty to the buyer. The deed stated, among other things, that the property was "free and clear from all former and other grants, bargains, sales, liens, taxes, assessments, encumbrances and restrictions of whatever kind or nature whatsoever, except all taxes and assessments for the current year, a lien but not yet due or payable," and specific exceptions described in Schedule B, Section 2, which was attached to the deed. Schedule B, Section 2, does not include an exception regarding the encumbrances the buyer now alleges.

## II. The Complaints

### A. The First Lawsuit

¶ 46 The buyer first sued the seller on February 14, 2007, asserting claims for breach of contract, fraud and deceit, and indemnification. The buyer alleged that the seller transferred title that was encumbered by a lease agreement that permitted a tenant to operate a tavern on the property, and, in so doing, breached the representations and warranties in the March 2006 real estate purchase agreement. The case was tried to the district court from January 20 to 23, 2009. On April 2, 2009, the trial court found that the seller breached its representations and warranties that the property was free of encumbrances, but did not award damages. A division of this court affirmed the judgment as to breaches of the real estate purchase agreement and the warranty deed, but remanded to the district court for further findings regarding whether the buyer had proved that the lease diminished the value of the property. *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109 (Colo.App.2010).

### B. The Second Lawsuit

¶ 47 On January 13, 2009, just a week before the first case went to trial, the buyer filed a second complaint alleging that the seller breached the purchase agreement by not disclosing "the potential for a claim of a right of reimbursement." It also alleges that the seller breached the terms of the warranty deed by not conveying the parcels free and clear from, as relevant here, all former and other liens, taxes, assessments, encum-

brances, and restrictions, other than the specific exceptions in the relevant attachment.

¶ 48 The record includes evidence that, in September 2004, the seller conveyed land adjacent to the RV park to Centerra Metropolitan District No. 1, which was developing land surrounding the property. According to the record, Centerra dedicated that land to the City in December 2004. The record also indicates that Centerra constructed roads adjacent to and abutting the RV park, and that the roads were completed and accepted by the City's engineering department in April 2006. These events predate the seller's delivery of the warranty deed to the buyer.

¶ 49 On July 8, 2008, the City of Loveland and Centerra executed a property reimbursement agreement in which they agreed that Centerra would have an opportunity to be reimbursed for the cost of the road construction by future developers or redevelopers of property adjacent to and abutting the improvements Centerra had installed. The reimbursement agreement was recorded on August 1, 2008.

¶ 50 The buyer asserts that, on August 7, 2008, the City sent a certified mail notice that it had filed the reimbursement agreement against the property. There is evidence that the City advised the buyer that if it chose to redevelop the property, it would be required to pay Centerra more than $750,000 to reimburse it for roads it constructed adjacent to the property. The record does not indicate whether the buyer has applied to redevelop the parcels, nor does it indicate whether Centerra or the City has asserted a claim for reimbursement of the road construction costs.

## III. Claim Preclusion

¶ 51 Claim preclusion bars the repeated litigation of claims that have already been resolved by a court. It serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

¶ 52 Thus, a claim that has been resolved in one judicial proceeding may not be litigated again in a second judicial proceeding when (1) the first judgment is final, (2) there is identity of subject matter, (3) there is identity of claims for relief, and (4) there are identical parties or there is privity between parties to the two actions. *Burlington Ditch Reservoir & Land Colo. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645, 668 (Colo. 2011); *Argus Real Estate*, 109 P.3d at 608.

¶ 53 The determination of whether there is identity of claims "is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claims relies." *Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 199 (Colo.1999). The supreme court has said that "claim preclusion bars relitigation not only of all claims actually decided, but of all claims that might have been decided if the claims are tied by the same injury." *Argus Real Estate*, 109 P.3d at 609. Quoting Restatement (Second) of Judgments § 24 (1982), the court further explained that claim preclusion

> bars a litigant from splitting claims into separate actions because once judgment is entered in an action it "extinguishes the plaintiff's claim ... includ[ing] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

*Argus Real Estate*, 109 P.3d at 609.

¶ 54 In *Argus Real Estate*, a corporate landowner agreed to grant title of property to a public highway authority. Under the agreement, the highway authority agreed to return title to the landowner if it did not use the property. The landowner's general partner later executed a gift deed to the highway authority that did not include the reversion agreement. The landowner next assigned its interest in the agreement to a real estate company. The highway authority sued the landowner for a declaratory judgment and to quiet title. The landowner counterclaimed, alleging breach of contract and seeking specific performance, declaratory judgment, and to quiet title. The district court granted the highway authority's motion for summary judgment. The real estate company, as assignee of the original agreement, later sued the highway authority seeking reformation of the agreement. The supreme court ultimately affirmed the district court's grant of summary judgment based on claim preclusion. The court said "it was incumbent upon each party to raise any claims, issues and defenses it may have had that would affect the adjudication of rights in the parcel." *Id.* The court ruled that the claim was precluded because the landowner could have raised a statutory reformation claim and should have done so "because the claim directly involved the adjudication of its rights in the parcel as part of the quiet title claim." *Id.* Thus, although the landowner and the real estate company sought different relief, the real estate company's claims were precluded because they alleged the same promise, the same breach, and the same injury to ownership of the property.

¶ 55 In *Salazar*, a division of this court further explained that, when determining whether a factual grouping constitutes a transaction, we do so "pragmatically, giving weight to such factors as 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" 148 P.3d at 281 (quoting *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 35 (1st Cir.1996)); *accord* Restatement § 24. Other courts, adopting but embellishing the Restatement § 24 test, measure the claim by reference to "all grounds for relief arising out of the conduct complained of," *Kilgoar v. Colbert County Bd. of Educ.*, 578 F.2d 1033, 1035 (5th Cir.1978); "operative facts," *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 683 (8th Cir.1997); a "factual clone," *Sims v. Mack Trucks, Inc.*, 463 F.Supp. 1068, 1070 (E.D.Pa.1979); or "a common nucleus of operative facts," *Haag v. United States*, 589 F.3d 43, 45–46 (1st Cir.2009); *In re Ark–La–Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007). *See also* 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4407, at 173–77 (2d ed. 2002).

¶ 56 Most modern courts have defined a cause of action in terms of a functionally

related group of facts, and have defined a transaction functionally rather than analytically, and flexibly rather than rigidly. Robert C. Casad & Kevin M. Clermont, *Res Judicata, A Handbook on its Theory, Doctrine, and Practice* 65–66 (2001). The general rule is that a court will look to the *injury* underlying each of the proceedings. 1B Colo. Prac., Methods of Practice § 25:2 (5th ed.) (emphasis added); *Farmers High Line*, 975 P.2d at 199. The relevant inquiry is whether the claims arise out of the same transaction, seek redress for essentially the same basic wrong, and rest on the same or a substantially similar factual basis. *Porn*, 93 F.3d at 34.

¶ 57 It is on this issue that I depart from the majority's analysis and reliance on *Petromanagement*. *Petromanagement* was a federal diversity case, and the primary issue was whether the court should apply the federal or state law of claim preclusion. The court concluded that the federal law controlled. *Petromanagement*, 835 F.2d at 1331. There, an oil and gas exploration company entered into an option agreement to buy oil and gas leases from an oil and gas development company. The company later bought five leases pertaining to five wells, each by way of a separate, but identical, purchase agreement. *Id.* In its first suit, the exploration company sought rescission of the option agreement, alleging that the development company had not met its contractual obligations, including keeping one particular well free of all liens. *Id.* In its second suit, the exploration company referenced the five separate lease purchase agreements. This time, the company not only sought rescission and restitution, but also sought actual and punitive damages, alleging the development company had fraudulently induced it to enter into the contracts, falsely represented the production capabilities of the wells, and falsely advised it regarding those capabilities. The court of appeals said it was not required to find that the five lease purchase contracts constituted a single transaction. Instead, it concluded that the two lawsuits presented the same cause of action because the five contracts were identical and constituted a sufficiently related series of connected transactions. Thus, the court did not take a cate-

gorical approach based on a conclusion that the claims arose from a single contract, but, rather, took a pragmatic approach based on considerations of time, space, origin, and motivation, whether the claims formed a convenient trial unit, and whether treatment of the claims as a unit conformed to the parties' expectations. Thus, I do not perceive the ruling in *Petromanagement* as rigid or controlling on the facts before us.

## IV. Seller's Motion for Summary Judgment

¶ 58 The seller sought summary judgment, asserting that a final judgment in February 2007 lawsuit precludes litigation of the buyer's claims in the January 2009 suit.

¶ 59 The trial court said, "[Claim preclusion] not only bars issues actually decided, but also any issues that *should* have been raised in the first proceeding, but were not." (Emphasis added.) On this premise, it ruled that the buyer's second claim was precluded because both the first and second lawsuits against the seller "allege breaches of the same Contract and Deed, and arise out of the same operative facts surrounding the sale," and the buyer could have easily raised issues concerning the Reimbursement Agreement in the first action.

¶ 60 This case turns on the question of whether there is identity of claims.

## V. Analysis

¶ 61 The February 2007 claim regarding the lease and the January 2009 claim regarding the road construction reimbursement allege different events relating to different transactions and injuries. They also seek markedly different relief. Thus, the seller did not meet its burden to show, based on undisputed facts, that the buyer's January 2009 claim is precluded.

### A. Identity of Claims

¶ 62 The buyer's 2007 claim and its 2009 claim pertain to different

- alleged encumbrances (lease vs. reimbursement liability);

- documentary sources (lease between the seller and the tenant vs. reimbursement agreement between Centerra and the City);

- parties whom the alleged encumbrances benefit (tenant vs. Centerra);

- locations (tavern vs. adjacent road);

- status of the alleged encumbrances at the time of closing (operative vs. potential);

- dates on which the alleged encumbrances attached to the property (before closing vs. yet to be determined);

- alleged dates of the discovery (before February 2007 vs. after that date);

- injuries ($1.17 MM diminished property value resulting from the lease vs. encumbrance of $794,871.69 liability for road construction in the event of redevelopment); and remedies (declaration that lease is unenforceable and damages based on lease vs. damages based on the reimbursement for road construction).

In addition, the two claims are so disparate that it is debatable whether they form a convenient trial unit. The record is silent about whether the parties would have expected claims regarding such diverse injuries and claims to have been tried as a single unit.

¶ 63 Considering the foregoing factors, the claims do not seek redress for the same injury and they do not rest on the same or substantially similar evidentiary or factual bases. Therefore, considering the claims functionally rather than analytically, and flexibly rather than rigidly, I conclude that the lease encumbrance was the transaction addressed in the February 2007 lawsuit and the alleged reimbursement encumbrance is the transaction addressed in the January 2009 lawsuit. In this regard, I conclude that although the real estate agreement and the transfer of title were each single events, the covenants the seller made in them are susceptible of separate breaches based on claims by distinct parties arising at different times.

### B. Seller's Arguments

¶ 64 To large measure, the seller argues that the buyer knew about the road construction and anticipated that it might be required to reimburse Centerra. These arguments, however, pertain to the merits of the buyer's claims; that is, whether the seller failed to disclose the reimbursement matter and whether that matter constituted a breach of the covenant of title. Therefore, I have considered them only to the extent that they suggest that there is identity of claims and that the claims constitute a single transaction for claim preclusion purposes.

¶ 65 I reject as overbroad the seller's contention that "claims preclusion bars re-litigation of claims that have already been decided as well as those which *could have been decided*." (Emphasis added.)

¶ 66 The four-part test for claim preclusion is whether there is a final judgment, identity of subject matter, identity of claims for relief, and identity of parties. When determining whether there is identity of claims, it is necessary to consider the factors set out in *Salazar*. The statement that claim preclusion bars the relitigation of claims that could have been decided does not supplant the four-part test. Instead, it merely observes that when the four-part test is satisfied, it not only bars the theories of relief that were actually litigated, but also bars theories of relief that could have been presented. In this regard, it is a corollary to the statement that the determination of whether there is identity of claims "is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claims relies." *Farmers High Line Canal*, 975 P.2d at 199.

¶ 67 The cases on which the seller relies do not hold to the contrary.

¶ 68 With regard to *In re Estate of Youngquest*, 102 Colo. 105, 111, 76 P.2d 1117, 1119 (1938), the seller says "the appellate court was clear that claim preclusion bars not only those matters actually decided but also those which might have been litigated." [10] There, however, the supreme court made it

---

**10.** Although seller's brief cites page 118 of that decision, I can find no such language on that page. Instead, I address similar language that appears on page 1119.

clear that there must be an identity of claims: "[Claim preclusion] is controlling where the second action is based upon the *same claim* as was asserted in the first, but where the second proceeding is based upon a *different claim*, only matters *actually litigated* in the first action are [precluded]." *Id.* at 110–11, 76 P.2d at 1119 (emphasis in the original). Indeed, the court described the difference between the effect of a judgment on a second action for the same claim or demand, and its effect on a second action between the same parties on a different claim or cause of action:

> In the former, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It concludes the parties as to every matter which was offered and received to sustain or defeat the claim or demand, and as to every other substantial matter which might have been offered for that purpose; but, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel *only as to those matters actually litigated and determined, and not what might have been.*

*Id.* at 111, 76 P.2d at 1119 (quoting *Grand Valley Irrigation Co. v. Fruita Improvement Co.*, 37 Colo. 483, 500, 86 P. 324, 330 (1906)) (emphasis added).

¶ 69 With regard to *Natural Energy Resources Co. v. Upper Gunnison River Water Conservancy District*, 142 P.3d 1265, 1280, n. 22 (Colo.2006), the seller presents the following quotation from *Argus Real Estate:* "Claim preclusion works to preclude relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not." 109 P.3d at 608. However, the *Argus* court did not rely on the quoted language in reaching its decision. Moreover, the court again made it clear that claim preclusion only bars *relitigation* of claims "that might have been decided *if the claims are tied by the same injury.*" *Id.* at 609 (emphasis added). With regard the statement about "matters that could have been raised in a prior proceeding but were not," the court cited *Lobato v.*

*Taylor,* 70 P.3d 1152, 1165 (Colo.2003), as the source.

¶ 70 Although *Lobato* does, indeed, make that statement, the court there did not rely on that language to reach its decision. The court cited 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4403, at 20 (2d ed. 2002), as the source of the statement. The language in *Federal Practice and Procedure* that most closely resembles the language in *Lobato* begins the editors' summary of policies and sources of res judicata. It does not state the rule itself. Instead, it states that there are many closely related policies that underlie res judicata rules. It then says that this is so whether the *purpose and effect of the rule is* to preclude relitigation of matters that have been litigated previously or to preclude any litigation of matters that should have been litigated previously. This is not a statement of the rule of claim preclusion; it is a statement of the purpose and effect of the rule. And, indeed, depending on the circumstances of a case, application of the four-part rule may bar relitigation of matters previously litigated or bar litigation of matters related to the same injury that could or should have been litigated in the context of the earlier proceedings. Regardless of the treatise's introductory description of the purpose and effect of the rule of claim preclusion, it does not establish binding Colorado precedent.

¶ 71 The seller's reliance on *Holnam, Inc. v. Industrial Claim Appeals Office*, 159 P.3d 795, 798 (Colo.App.2006), is also unavailing. First, the division ruled that the second action was based on the same injury. Under existing law, a second claim for the same injury constitutes the same claim and is precluded because it has been previously litigated, not because it could have been litigated. Thus, once again, the four-part rule controls, and in *Holnam,* the division concluded there was an identity of claims in the two suits.

¶ 72 Thus, the essential question here is not whether the buyer *could* have included the road construction reimbursement agreement in the February 2007 lawsuit, but whether the seller has demonstrated based on undisputed facts that there is an identity of claims. And here, the two claims do not

pertain to the same injury; are not related in time, space, or origin; do not rely on the same operative facts; and do not form a convenient trial unit. Therefore, I conclude that the seller did not meet its burden of showing otherwise based on undisputed facts. Accordingly, I also conclude that the court erred when it ruled that the buyer's January 2009 claims were precluded and granted summary judgment on that basis.

### C.  C.R.C.P. 15(d)

¶ 73 I am not persuaded by the seller's argument that controlling Colorado precedent requires the buyer to join these disparate claims in a single lawsuit, and to have the resolution of the lease dispute preclude resolution of the reimbursement agreement dispute. Such a rule would ignore, and possibly supplant, the claim preclusion test that there must be an identity of subject matter, claims, and parties. Moreover, absent a more explicit statement regarding claim preclusion in C.R.C.P. 15(d), this permissive procedural rule does not operate to modify the common law test of claim preclusion.

¶ 74 Accordingly, I concur that the judgment must be reversed. However, I would remand with instructions to deny the seller's motion for summary judgment—claim preclusion, to address any pending motions, and to proceed with litigation of the buyer's January 2009 claim.